HARRIET M. HANNA, as Executrix, etc., of FRANK HANNA, Deceased, Respondent, *v.* MERWIN B. UPDIKE, Appellant.

Third Department, November 21, 1924.

Malicious prosecution — plaintiff's testator, who was unknown to defendant, was arrested on defendant's identification and complaint as man who had passed forged check — other victims of forger identified plaintiff's testator as criminal — further investigation disclosed that plaintiff's testator was not forger and he was discharged — plaintiff's testator failed to sustain burden of showing that defendant acted recklessly and without probable cause in making identification and complaint.

In an action for malicious prosecution brought by plaintiff's testator, who was identified by the defendant as the stranger who passed a forged check to the defendant and who was arrested on the complaint of the defendant following the identification, but subsequently discharged, the plaintiff's testator failed to sustain the burden of showing that the defendant in identifying him as the perpetrator of the fraud acted without probable cause and with a reckless disregard of proofs and signs of his innocence, since it appears that the plaintiff's testator answered the general description of the man who actually passed the forged check, and that not only was he identified by the defendant as the forger, but he was also identified by other victims of the forger as the man who committed the fraud.

COCHRANE, P. J., and HINMAN, J., dissent.

APPEAL by the defendant, Merwin B. Updike, from a judgment of the Supreme Court in favor of Frank Hanna, entered in the office of the clerk of the county of Broome on the 7th day of December, 1923, upon the verdict of a jury for $800, and also from an order denying his motion for a new trial made upon the minutes.

*Ray T. Hackett* [*Frank J. Mangan* of counsel], for the appellant.

*Wales & Meagher* [*Frederick J. Meagher* of counsel], for the respondent.

H. T. KELLOGG, J.:

The plaintiff's husband, Frank Hanna, was arrested upon the charge of uttering a forged check. The charge was subsequently withdrawn and Hanna was released from the imprisonment which followed his arrest. He then brought this action of malicious prosecution against the defendant, who had signed an information charging him with the crime. He had a verdict, and the defendant appealed. Subsequently Hanna died, and his wife, Harriet M. Hanna, was substituted as plaintiff.

The defendant was a storekeeper in the city of Binghamton, N. Y. On March 6, 1923, a stranger entered the store. He told

the defendant that his name was W. H. Miller; that he lived at 99 Main street; that he ran on the Delaware and Hudson from Binghamton to Albany; that he had a daughter who was about to be married; that he wished to buy her a wardrobe trunk. He looked over the defendant's stock and singled out two trunks. The price of one was sixty-five dollars, while the price of the other was forty-five dollars. He said that he was expecting a check from a man in Owego, who owed him money; that if the check came he would call next day and buy one of the trunks. On the following day the stranger reappeared, stated that his check had come and that he would take the forty-five dollar trunk. He exhibited to the defendant a check for seventy-nine dollars and fifty cents, apparently drawn by " H. C. Haywood " on the First National Bank of Owego, and made payable to " W. H. Miller." He indorsed the check with the name " W. H. Miller " and tendered the same to the defendant. The defendant took the check and handed back thirty-four dollars and fifty cents in cash to balance the difference between the amount of the check and the price of the trunk. The defendant agreed to send the trunk to " W. H. Miller " at 99 Main street. The stranger thereupon left the shop. The check was a forgery. No man by the name of " H. C. Haywood " had drawn the check. No man by the name of " W. H. Miller " lived at 99 Main street. Two other tradesmen of Binghamton, Paul Hilbert and George Milks, were contemporaneously victimized by means of the same trick by a man calling himself " W. H. Miller." The man obtained cash from them upon checks apparently drawn by " H. C. Haywood." On March eighth or ninth the defendant was called to the Binghamton bank in which he had deposited for collection the check received by him. He was informed by a city detective that the check was a forgery, and was told that Hilbert and Milks had been similarly victimized. He gave to the detective a description of the stranger which corresponded with the description given by the other tradesmen. The man was commonly described as being about fifty years of age, as weighing nearly 200 pounds, as being nearly six feet tall, and as wearing dark clothes with metal buttons. The defendant took no steps in the matter until March 30, 1923. On that day Detective Crawford requested the defendant to go to the Erie railroad station to see a man suspected by the police department. That man was Frank Hanna. He was a baggageman in the employ of the Erie railroad. He was over fifty years of age, was nearly six feet tall, and weighed nearly 200 pounds. The defendant said to the detective: " Gosh, I believe that is our man." Again he said: " The more I look at him, the more I am positive." Later

the defendant repeated these statements at police headquarters. In the afternoon of this same day the detective called at the defendant's store and requested him to go with him to swear out a warrant against Hanna. The defendant proceeded to the office of the district attorney where an information, charging Frank Hanna with having passed a forged check upon the defendant, was laid before him. The defendant signed the information as requested. That evening Frank Hanna was arrested and placed in jail. Further investigation revealed that he was not the guilty man. The charge was withdrawn by the defendant and Hanna was released.

The defendant, prior to seeing Hanna at the railway station, was wholly unacquainted with him and quite unaware of his existence. Self-evidently, as he did not know him, he could not have harbored a feeling of hatred for him or actually borne him malice. It is true that if the defendant, in identifying him as the perpetrator of the fraud, acted without probable cause, and with a reckless disregard of proofs and signs of Hanna's innocence, his conduct would have been sufficiently reprehensible justly to have been regarded as malicious and actionable. It does not appear to us, however, that Hanna, upon whom the burden of proof rested, established by a preponderance of proof that such was the case. The defendant testified that, in making his identification of Hanna, he sincerely believed him to have been the man. It is not possible to say that the mind of the defendant, acting upon proofs laid before it by the defendant's visual sense, did not honestly recognize Hanna and justly pronounce him to be the criminal. The descriptions of the criminal given by the defendant, before he had ever seen Hanna, in the judgment of many police officers, constituted an accurate portrayal of Hanna. Paul A. Hilbert, who was contemporaneously victimized in a similar manner as the defendant by the same person, instantly recognized Hanna as the man. He told the police that if he was not the man he was "his double." William A. Underwood, an employee of Hilbert, recognized him with such certainty that he said to a detective: "If that fellow in the baggage car there isn't him, it is his ghost." May C. Ross, another employee of Hilbert, who saw the criminal, said of him that "his general appearance looked very much like the man I had seen in Mr. Hilbert's store." George Milks, another victim, testified that "Mr. Hanna resembled the man that had passed the forged check." This witness, according to the defendant, told the defendant at the railway station that Hanna "looked like the man." According to Detective Crawford, Milks at this time said to the defendant, "The more I looked at him, the more I think he looked like him." It was

not denied by the witness Milks that he made these statements. Hanna caused testimony to be given by three other witnesses that a certain man, assumed by them to be the criminal, did not resemble him. The difficulty with such testimony is that there was no proof, and no just inference, that the man of whom the witnesses spoke was the identical man who perpetrated the crime upon the defendant. We think it clear that Hanna signally failed to sustain his burden of proof that the defendant acted without probable cause in making his identification and laying an information against him.

The judgment and order should be reversed and the complaint dismissed, with costs.

All concur, except CoCHRANE, P. J., and HINMAN, J., dissenting.

Judgment and order reversed on the law and complaint dismissed, with costs.