GLORIA J. BOOSE, Respondent, v CITY OF ROCHESTER, Appellant.

Fourth Department, November 16, 1979

## APPEARANCES OF COUNSEL

*Louis N. Kash, Corporation Counsel (Reynolds E. Hahn* of counsel), for appellant.

*King & McDowell (Roy W. King* of counsel), for respondent.

## OPINION OF THE COURT

SIMONS, J. P.

Plaintiff commenced this action for malicious prosecution alleging that defendant, acting through its police officers, wrongfully procured her indictment for assault, second degree. At the conclusion of plaintiff's case, the trial court dismissed the cause of action for malicious prosecution, but permitted the trial to proceed. At the close of the evidence, the court solicited a motion to conform the pleadings to the proof and it

then submitted the cause to the jury for recovery based upon negligence and false imprisonment. The jury returned a verdict of $6,000 in plaintiff's favor and defendant appeals.

Plaintiff was arrested for two crimes apparently committed by others. In the first instance, the perpetrator of the crime identified herself to police by use of plaintiff's name, and a warrant was issued charging "Gloria Jean Booth" with obstruction of governmental administration, a misdemeanor. In the second instance, the police had no identification but assuming that the crime was committed by the same defendant, they procured a warrant for "Jane Doe Booze" and arrested plaintiff for assault second degree. The charge was subsequently submitted to the Grand Jury and an indictment was handed up, later to be superseded by a no bill and dismissal.

At the root of the case is plaintiff's right to damages, by whatever legal theory, for injury occasioned to her because of the alleged inadequate investigation by the police into the identity of a criminal defendant before obtaining a warrant and making an arrest. The jury in this trial was asked to decide in essence, whether the police had been negligent in their preparation of plaintiff's assault case. Plaintiff may not recover under broad general principles of negligence, however, but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution. Her right to be free of restraint or unjustified and unreasonable litigation is limited by the obvious policy of the law to encourage proceedings against those who are apparently guilty of criminal conduct and to let finished litigation remain undisturbed and unchallenged (see Prosser, Torts [4th ed], § 119; see, also, *Munoz v City of New York*, 18 NY2d 6, 9; *Broughton v State of New York*, 37 NY2d 451, 457). To that end, plaintiff's recovery must be determined by established rules defining the torts of false arrest and imprisonment and malicious prosecution, rules which permit damages only under circumstances in which the law regards the imprisonment or prosecution as improper and unjustified (see 1 Harper and James, Law of Torts, pp 300-302).

At the time of these events plaintiff was 23 years old, employed by Eastman Kodak Company and a part-time college student. She resided at 167 Pennsylvania Avenue in Rochester with her mother and seven sisters and she had an older, married sister who lived one or two houses away.

On June 22, 1975 one Miguel Pabon was driving down Pennsylvania Avenue near the Boose home when someone in a group of children threw a rock at his car. Mr. Pabon stopped and got out. Intending to find the child's parent, he followed the child as it ran to a nearby house. A "fair number" of people came out of the house, including one woman with a hammer and another with a club, and they started to chase him. Mr. Pabon tried to run to his car but before he could safely reach it he was assaulted and robbed. The next day, after reporting the incident to the police, he went to the house on Pennsylvania Avenue to investigate with Sergeant Scacchetti and Officer Zigarowicz of the Rochester police. A young lady came to the door and Mr. Pabon identified her as the one who had hit him. When she was asked, she answered that her name was "Gloria Jean Boosey" but Officer Scacchetti testified that a confrontation soon began to develop and the men decided to leave rather than risk "having a riot on [their] hands". Officer Scacchetti returned to the house on several subsequent occasions to investigate but no one answered the door. He described the person who gave her name as Gloria Jean Boose as 18 or 19 years of age.

Several months later, on October 16, 1976, a warrant was issued on the basis of these facts charging "Gloria Jean Booth" with obstruction. At trial Officer Scacchetti admitted that plaintiff was not the person whom he had met on Pennsylvania Avenue in June and who identified herself as "Gloria Jean Boosey".

A second incident occurred on August 20, 1975. On that date Anthony Kasper was driving his car down Pennsylvania Avenue when a young child threw a rock at him. Mr. Kasper also got out of his car to locate the child's parents and when he did so he was assaulted by two females, one heavy set and around 40 years of age, and the other between 14 and 17 years old. Before the Grand Jury and during the trial Mr. Kasper identified one Ossie Boose as the older woman and as the individual who had hit him with a board causing his injuries. She was the mother of the child and, as it turns out, she is plaintiff's mother.

On October 23, 1975 a warrant was procured based upon this August incident charging "Jane Doe Booze" with assault, second degree. Officer Scacchetti explained that a Jane Doe warrant was used because Kasper had not identified the defendant to him and he (Scacchetti) "assumed that it was one

of the two (females, the younger one) from the previous (incident)". It is this charge on which plaintiff was indicted and which is the basis of this action. At the trial Officer Scacchetti admitted that he was unsure at the time that he procured the warrants in October whether Gloria Jean Boose was the person he actually wanted or whether it was some other person in the Pennsylvania Avenue house.

Plaintiff appeared at the police station in response to these warrants at about 10:30 A.M. on October 30, 1975. She was booked, photographed and fingerprinted and then held in a cell until released on her own recognizance at about 5:00 P.M. Officer Scacchetti was in the building at the time and he was notified of her arrest, but he did not investigate further to determine whether the right person had been taken into custody. Plaintiff was first served with the obstruction warrant and later that afternoon, she was served with the Jane Doe warrant for assault.

Plaintiff was arraigned the next morning and a preliminary examination was requested but never took place, apparently because of plaintiff's failure to appear. The Monroe County Grand Jury indicted her for assault second degree January 30, 1976 and she was arraigned in County Court on the indictment February 5, 1976. It subsequently appeared that there was no identification testimony before the Grand Jury, and the indictment was superseded by a no bill dated February 17. County Court dismissed the indictment on February 18, 1976 and this action followed.

It will be helpful at the outset to recite the difference between the torts of false arrest and imprisonment and malicious prosecution as they have been defined by the Court of Appeals in *Broughton v State of New York* (37 NY2d 451, 456, 457, *supra):*

"The action for false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement. Whenever a person unlawfully obstructs or deprives another of his freedom to choose his own location, that person will be liable for that interference (Restatement, 2d, Torts, § 35, comment *h).* To establish this cause of action the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged (Restatement, 2d, Torts, § 35)."

"The tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation (Prosser, Torts [4th ed], § 119; False imprisonment; liability of private citizen for false arrest by officer, Ann., 21 ALR2d 643). The essence of malicious prosecution is the perversion of proper legal procedures. Thus, it has been held that some sort of prior judicial proceeding is the *sine qua non* of a cause of action in malicious prosecution *(Al Raschid v News Syndicate Co.,* 265 NY 1). Such a judicial proceeding may be either an evaluation by a Magistrate of an affidavit supporting an arrest warrant application, or an arraignment or an indictment by a Grand Jury. The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice (Prosser, Torts [4th ed], § 119)."

A cause of action for false imprisonment accrues when the confinement terminates *(Caminito v City of New York,* 25 AD2d 848, 849, affd 19 NY2d 931; *Schildhaus v City of New York,* 23 AD2d 409, 411, affd 17 NY2d 853). A cause of action for malicious prosecution accrues when the proceeding terminates favorably to the plaintiff *(Giglio v Delesparo,* 46 AD2d 928; and see *Lincoln First Bank of Rochester v Siegel,* 60 AD2d 270, 276). Plaintiff was released from custody on October 30, 1975 and the indictment against her was dismissed February 18, 1976. Her notice of claim under section 50-e of the General Municipal Law was filed on March 16, 1976, timely enough for a claim of malicious prosecution but more than 90 days after her confinement terminated. Thus, perhaps it is enough to say that any cause of action for false imprisonment was barred for failure to file a timely notice of claim—if the defense was interposed properly (see *Flanagan v Board of Educ.,* 47 NY2d 613, 617; *Matter of Schlosser v Board of Educ.,* 47 NY2d 811, 813). Because the original complaint alleged only a cause of action for malicious prosecution, however, and that claim was timely, defendant did not plead the notice requirement of section 50-e as a defense. At the close of the evidence, after the court permitted plaintiff to amend her pleading to conform to the proof, it ignored defendant's request for a ruling that claims based upon negligence and false imprisonment were time barred. Under the circumstances, defendant should have been permitted to amend its

answer to assert the defense of section 50-e of the General Municipal Law, and the actions for negligence and false imprisonment should have been dismissed.

Further than that, however, an action for false arrest and imprisonment was not made out on the facts. An arrest made pursuant to a warrant valid on its face and issued by a court having jurisdiction of the crime and person is privileged *(Broughton v State of New York,* 37 NY2d 451, *supra; Matter of Williams v City of Hudson,* 69 AD2d 921; *Ford v State of New York,* 21 AD2d 437) and this is so even though the process may have been erroneously or improvidently issued *(Nastasi v State of New York,* 275 App Div 524, affd 300 NY 473; *Vittorio v St. Regis Paper Co.,* 239 NY 148). The arresting officer having reasonably carried out the instruction on the warrant, the appropriate remedy to challenge an unlawful arrest is malicious prosecution (see *Broughton v State of New York, supra;* Restatement, Torts 2d, §§ 123; 35, comment *a).*

█ An arrest warrant is valid on its face when it follows the statutory form *(Ford v State of New York, supra)* and the statute provides that the warrant shall contain either "the name of the defendant to be arrested or, if such be unknown, any name or description by which he can be identified with reasonable certainty" (CPL 120.10, subd 2, par [d]). The arrest and imprisonment under the obstruction warrant was privileged, therefore, because the warrant identified the person to be arrested as "Gloria Jean Booth" residing at 167 Pennsylvania Avenue. Although the surname was erroneous, it was a reasonable approximation of the accused's true name and the error was not fatal. The assault warrant charging "Jane Doe Booze" was not valid on its face because it failed to identify the person to be arrested either by name or other descriptive information by which she could be identified with reasonable certainty (see *Bozeman v City of Buffalo,* 62 Misc 2d 967, affd 34 AD2d 892). Nevertheless, plaintiff's detention pursuant to two warrants, one valid and one invalid, would prevent her recovery for false imprisonment if the arrest was privileged (see *Burden v City of Niagara Falls,* 44 AD2d 754).

There are exceptions to this privilege. As we have noted, an arrest is not privileged if the issuing court lacks jurisdiction *(Nuernberger v State of New York,* 40 AD2d 939, 49 AD2d 1018, revd 41 NY2d 111; *Casler v State of New York,* 33 AD2d 305, 308; *Harty v State of New York,* 29 AD2d 243, 244, affd 27 NY2d 698) but want of jurisdiction is not claimed here.

Further, if there is more than one individual with the same name, the arresting officer must exercise reasonable care and due diligence in executing the warrant (see *Williams v City of Buffalo,* 72 AD2d 952; *Craner v Corbett,* 27 AD2d 796; *Maracle v State of New York,* 50 Misc 2d 348; Restatement, Torts 2d, § 125). This is not a misnomer case, however, because plaintiff was the person intended to be apprehended under the warrant. The police error was in determining the true identity of the party to be named in the warrant, not in determining that plaintiff was the person named.

■ Finally, it has been held that an arresting officer may not insulate himself from liability for false arrest or imprisonment by procuring the issuance of a warrant based upon his own false or unsubstantiated evidence *(Ross v Village of Wappingers Falls,* 62 AD2d 892). In this case, the warrant was procured on the affidavits of the victim, Kasper, and of the arresting officer, Scacchetti. The affidavits included facts sufficient to establish that a crime had been committed, although Kasper did not know the identity of the perpetrator. In executing his affidavit, Officer Scacchetti did not knowingly supply any false evidence to support issuance of the warrant. He erroneously assumed on the basis of his limited knowledge that the same defendant who was involved in the Kasper assault was involved in the Pabon matter. The gravity of that mistake could be tested by an action for malicious prosecution, but it did not give plaintiff a cause of action for false imprisonment. Thus, the cause of action for false arrest and imprisonment should not have been submitted to the jury because it was time barred and also because the confinement was pursuant to a valid warrant and therefore privileged.

■ Turning now to malicious prosecution, we hold that the trial court erroneously dismissed that cause of action. Plaintiff's uncontroverted evidence established the initiation of a criminal proceeding against her by defendant which terminated in her favor. The evidence also established *prima facie* that the proceeding was commenced without probable cause and with actual malice.

■ Probable cause consists of such facts and circumstances as would lead a reasonably prudent man in like circumstances to believe plaintiff guilty *(Hyman v New York Cent. R. R. Co.,* 240 NY 137, 143; and see *Munoz v City of New York,* 18 NY2d 6; *Mullen v Sibley, Lindsay & Curr Co.,* 71 AD2d 21; *Colaruotolo v City of Cohoes,* 44 AD2d 616, affd 36 NY2d

716; Restatement, Torts 2d, § 662). A mistake of fact as to the identity of a criminal may be consistent with probable cause if the defendant acted reasonably under the circumstances and in good faith (*Burt v Smith,* 181 NY 1, 6; *Vennard v Sunnyside Sav. & Loan Assn.,* 44 AD2d 727; *Hanna v Updike,* 210 App Div 780; *Hobson v Koch,* 115 App Div 299; and see Malicious Prosecution—Mistaken Identity, Ann. 66 ALR3d 10), but failure to make inquiry of plaintiff or further inquiry about her when a reasonable man would have done so may be evidence of a lack of probable cause (*Sweet v Smith,* 42 App Div 502). In short, a defendant may be said to act with probable cause to arrest only if a reasonable man in the same position would believe, and defendant did in fact believe, that he had sufficient information to justify initiating a criminal proceeding against plaintiff without further investigation or inquiry (see Restatement, Torts 2d, § 662, comment *j*).

Plaintiff's arrest for assault was based upon affidavits made without any verification of her identity. Kasper could not name his assailant and Officer Zigarowicz, who interviewed him before preparing a police report, listed two female defendants, one in her forties and another named Roxanne, 14 to 16 years old, residing at an address listed as 173 Pennsylvania Avenue. This information differed significantly from the information Scacchetti acquired after the Pabon incident. He testified that the girl involved in that assault and identified as Gloria Jean Boose appeared to him to be 18 or 19 years of age and she resided at 167 Pennsylvania Avenue (where seven other Boose children resided). Furthermore, Scacchetti testified that he harbored some doubt that the name of Gloria Jean Boose given to him on June 22 during the Pabon incident was correct and he had returned to Pennsylvania Avenue several times to inquire further. Because of this doubt Scacchetti applied for the "Jane Doe Booze" warrant, rather than naming Gloria Jean Boose, but he did so without checking further or resolving the discrepancies in Officer Zigarowicz' report because he assumed that the August assault must have involved the same person as the Pabon incident in June. Plaintiff's name "stuck" in his mind.

It was defendant's contention that further investigation might prove futile or dangerous. The jury was entitled to weigh this claim, but it could also consider that the investigation had been dormant for several months and that nothing in the evidence indicated a need for plaintiff's prompt arrest.

Indeed, she appeared at the station voluntarily after the warrants were issued and she subsequently demonstrated by her employer's records that she was not home at the time of the August assault. Whatever the jury's resolution of those competing contentions, the evidence established, prima facie, that the police procured a warrant for plaintiff's arrest without probable cause to believe her to be the guilty party and the issue should have been submitted to the jury to decide.

■ There is a further contention to be addressed. The general rule is that a Grand Jury indictment is prima facie evidence of probable cause. The plaintiff in a malicious prosecution action must meet this evidence with proof that defendant has not made a full and complete statement of the facts either to the Grand Jury or the District Attorney, has misrepresented or falsified the evidence or else kept back evidence which would affect the result (*Hopkinson v Lehigh Val. R. R. Co.,* 249 NY 296, 300; see, also, *Matter of Williams v City of Hudson,* 69 AD2d 921, *supra; Trottier v West,* 54 AD2d 1025; *Danchak v State of New York,* 29 AD2d 609; and see, also, Malicious Prosecution: Effect of Grand Jury Indictment on Issue of Probable Cause, Ann. 28 ALR3d 748). The rule is based upon the reasoning that the Grand Jury acts judicially and it may be presumed that it has acted regularly on the matter. The burden is placed upon plaintiff, therefore, to rebut this presumption. One may well question whether there is any basis for application of the rule in this case when the Grand Jury superseded its original indictment three weeks later with a no bill (cf. *Adams v New York City Housing Auth.,* 24 AD2d 948), but be that as it may, there was evidence at the trial that the prosecution was transferred by the police to the District Attorney for Grand Jury action naming plaintiff as the defendant although the police knew that there was no evidence identifying her and in fact no witness testified before the Grand Jury to supply that evidence. This was sufficient to overcome any presumption in defendant's favor because of the Grand Jury indictment.

■ The remaining element necessary to prove the cause of action is malice. Malice means "malice in fact" or "actual malice", not malice implied by law (*Nardelli v Stamberg,* 44 NY2d 500). The only justification for a criminal proceeding is to bring an offender to justice and malice exists if the jury can find from the evidence that defendant commenced the proceeding because of a wrong or improper motive, something

other than a desire to see the ends of justice served *(Nardelli v Stamberg, supra;* Restatement, Torts 2d, § 668; Prosser, Torts [4th ed], § 119, pp 847-849). Thus, plaintiff is not required to prove that defendant was motivated by spite or ill will, although such proof will satisfy the legal requirements *(Dean v Kochendorfer,* 237 NY 384, 389; *Biener v City of New York,* 47 AD2d 520). The existence of malice may be presumed by proof that probable cause was lacking or by proof of defendant's reckless or grossly negligent conduct *(Biener v City of New York, supra; Giglio v Delesparo,* 46 AD2d 928, *supra; Smith v New York Anti-Saloon League,* 121 App Div 600, 603). Indeed, it has been said that it is difficult to conceive how a prosecution initiated without probable cause could be initiated with any other than bad motives (see *Schofield v Ferrers,* 47 Pa 194, 197 quoted in 1 Harper and James, Law of Torts, pp 321-322). The issue is a matter for the jury, however (see *Munoz v City of New York,* 18 NY2d 6, *supra)* and it may infer malice from the lack of probable cause insofar as it tends to show that defendant did not believe in the guilt of the accused and that he did not initiate the proceedings for a proper purpose *(Martin v City of Albany,* 42 NY2d 13, 17; *Halsey v New York Soc. for Suppression of Vice,* 234 NY 1, 7; Restatement, Torts 2d, § 669). It has been held that malice exists where a prosecution is commenced to discover who might have committed a crime *(Johnson v Ebberts,* 11 F 129). Viewing the evidence in a way most favorable to plaintiff, as we must on this appeal, the jury in this case might well have inferred from it that defendant's officers had arrested this plaintiff without probable cause and with actual malice for just that purpose.

The judgment should be reversed and a new trial granted.

SCHNEPP, CALLAHAN, DOERR and WITMER, JJ., concur.

Judgment unanimously reversed on the law, without costs, and a new trial granted.