■ WILLIAM E. DABBS, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 62230.) — Appeal from a judgment in favor of claimant, entered June 15, 1981, upon a decision of the Court of Claims (McCabe, Jr., J.). On December 13, 1977, a woman hitchhiker reported being raped by two light-skinned black males in a four-door green car parked at the uptown SUNY Albany campus. Officer O'Conner of the university's safety department investigated. With the victim's assistance, a composite sketch of one of the assailants, described in

part as an 18-year-old with a bad complexion and no facial hair, and dubbed "subject 2", was prepared. Photographs of three individuals, claimant among them, were shown to the victim on December 29, but she did not identify any of the three as "subject 2". Thereafter, on January 5, 1978, the Albany County Grand Jury indicted Louis Rios (the other suspect) and "John Doe" ("subject 2"). That same day Officer O'Conner obtained a "John Doe" arrest warrant containing a description of the unknown suspect, similar to that given O'Conner by the victim. On March 10, 1978, the victim picked out a photo of claimant as "a strong possibility". Later in March, a desk clerk at the Albany YMCA reported to police that she had seen the person depicted in the composite sketch, an individual she said she had seen with Rios during the week of December 13. After being shown a photo of claimant, taken in 1973, she stated he was that person. An attendant at the YMCA stated that he had expelled claimant from there on a few occasions. O'Conner obtained a picture of claimant showing him wearing a hat similar to that worn by Rios during the rape. Further, a former employer stated that claimant wore glasses like those pictured in the composite sketch. Finally, O'Conner telephoned claimant's mother, who, he maintained, stated her son knew Rios (a statement she later denied). Having reviewed the information with and been advised by an Assistant District Attorney that there was probable cause to arrest claimant, O'Conner procured a search warrant and, accompanied by Albany police, arrested claimant on the rape charge and searched his apartment and two-door brown vehicle. Claimant protested that he was innocent, told police he didn't know Rios and that he had an alibi. He spent four days in jail before being released. When the victim failed to select claimant out of a lineup, and further evidence implicated another, the charges were dismissed. Claimant promptly brought suit against the State and was awarded $15,000 in damages for his false arrest. Proceedings of a criminal nature are to be conducted in good faith and within the letter and spirit of the law. Accordingly, for an arrest warrant to be valid, it must follow the statutory form contained in CPL 120.10 (subd 2)(*Boose v City of Rochester,* 71 AD2d 59, 66). That statute provides that an arrest warrant must state or contain "the name of the defendant to be arrested or, *if such be unknown,* any name or description by which he can be identified with reasonable certainty" (emphasis added). The description contained in this warrant was sufficiently vague and indistinct as to match a large number of persons. Moreover, at the time of the arrest on March 24, 1980, the police knew the name of the person to be arrested. Hence, the 1978 John Doe warrant was invalid on its face, and arrest and imprisonment pursuant to that warrant was unlawful (see *Broughton v State of New York,* 37 NY2d 451, 457-458; *People ex rel. Sampson v Dunning,* 113 App Div 35). Nor, as the State contends, was there probable cause to justify arresting claimant without a warrant. Three factors in particular are relied upon most heavily by the State as linking claimant to the crime and providing probable cause for a proper warrantless arrest: (1) the YMCA clerk's statement that she saw Rios and claimant together the week of the rape; (2) the victim's selection of a photograph of claimant from a photo array and her statement that he was a good possibility as the second suspect; and (3) claimant's resemblance to the composite. The YMCA clerk's identification of the claimant could not provide cause for arrest; she did not claim to witness the crime, and at best she could only couple claimant with the other assailant. As for the victim's identification of claimant's photo made three months subsequent to the rape, it was tentative rather than positive and came after she had already failed to identify him about two weeks following the rape. The photograph used was five years old, taken when claimant was 18 — the age the victim believed her assailant to be. Moreover, of

the persons depicted in the photo array, only claimant was clean shaven, once again in accord with her description. Thus, her identification was of doubtful value. Significantly, prior to making the arrest, although O'Conner had more recent pictures of claimant, he did not show these to the clerk or the victim. With respect to the arresting officer's testimony that claimant closely resembled the composite, the trial court found that this was a "conclusion based upon an old photograph which depicted an individual having little resemblance to the way claimant looked in 1978". Our examination of the photographs, the composite sketch and the other evidence to which the officer was privy before the arrest, leads to the same determination. Other evidence indicated that claimant was not the rapist. An October, 1977 photograph showed him wearing a full beard, and he was similarly bearded and of clear complexion at the time of his arrest. Furthermore, the officer knew that claimant's car was dissimilar from that used by the rapists. Although not conclusive, these facts should have given O'Conner pause before arresting claimant. Thus we conclude that the State failed to carry its burden of proving legal justification for claimant's arrest (*Broughton v State of New York,* 37 NY2d 451, 458, *supra*). Absent were grounds for inducing an ordinary, prudent and cautious person to believe in good faith that claimant had committed a felony (*People v Coffey,* 12 NY2d 443, 451). At best, the available evidence indicated only that claimant was a suspect, nothing more. In light of the seriousness of the charges, the publicity attendant upon claimant's arrest in the local newspapers, and the length of time of incarceration, we do not find the damages award excessive. Judgment affirmed, without costs. Kane, J. P., Main, Mikoll and Yesawich, Jr., JJ., concur.

Casey, J., dissents and votes to reverse in the following memorandum.
Casey, J. (dissenting). In order for claimant to succeed in this action for false arrest, the warrant, which is the basis of the arrest, has to be found facially invalid at the time of its issuance, for, if facially valid, the warrant would make the claimant's arrest privileged and preclude his claim (*Saunsen v State of New York,* 81 AD2d 252). Even if the warrant was erroneously or improvidently issued (*Nastasi v State of New York,* 275 App Div 524, affd 300 NY 473) or is considered irregular thus requiring its vacatur before an action for false imprisonment could be maintained (*Houghtaling v State of New York,* 11 Misc 2d 1049), the arrest would be privileged and the claimant's recovery for false arrest precluded (*Boose v City of Rochester,* 71 AD2d 59, 66). As the majority states, an arrest warrant is valid on its face when it follows the statutory form (*Ford v State of New York,* 21 AD2d 437). The statute provides that the warrant shall contain either "the name of the defendant to be arrested or, if such be unknown, any name or description by which he can be identified with reasonable certainty" (CPL 120.10, subd 2; *Boose v City of Rochester,* 71 AD2d 59, *supra*). This arrest warrant issued by the County Court did not name the defendant. It named John Doe. If the identity of the person named stopped there, the warrant might well be considered void for its failure to identify the arrestee by descriptive information from which he could be identified with reasonable certainty (*Bozeman v City of Buffalo,* 62 Misc 2d 967, affd 34 AD2d 892). However, the warrant did not stop at naming John Doe. It additionally contained the following description: "Black Male, 18 years, 5'8'', 160 lbs, short Afro Hairstyle, Med. black-tone skin, poor complex. Glasses, (Plastic Frame off-yellow color)". Since claimant generally answered that description and was in fact the person whom the officer intended to arrest based upon identification information previously supplied to him by others, the police error was in determining the true identity of the party to be named in the warrant, not in determining that claimant was the person named, and hence an action for false

arrest will not lie (*Boose v City of Rochester,* 71 AD2d 59, 67, *supra*). In all other respects there is no doubt that the warrant was valid on its face. It was issued by a court with appropriate authority and jurisdiction, on information supplied by the arresting officer that was not false or unsubstantiated (*Ross v Village of Wappingers Falls,* 62 AD2d 892). At the time the warrant was sought the officer did not, in fact, know claimant's name. That he learned such name after the warrant was issued is, in my opinion, insignificant, for the validity of the warrant depends on the evidence as it existed at the time of the application for the warrant and not at a later time. The facial validity of the arrest warrant, therefore, precludes the claim for false arrest (*Suansen v State of New York,* 81 AD2d 252, *supra*). Claimant's recovery having been limited to his action for false arrest, the judgment should be reversed and the claim dismissed in its entirety.