UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1369
MANUELA RODRIGUEZ, ET AL.,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini, Senior U.S. District Judge]


Before

Torruella,* Chief Judge,

Bownes, Senior Circuit Judge,

and Cyr, Circuit Judge.



Juan Rafael Gonzalez-Munoz, with whom Gonzalez Munoz Law Office,
Gerardo Pavia-Cabanillas and Moreda & Moreda were on brief for
appellants.
Peter R. Maier, Attorney, Guillermo Gil, United States Attorney,
Frank W. Hunger, Assistant United States Attorney, and Robert S.
Greenspan, Attorney, were on brief for appellee.



May 15, 1995




*Chief Judge Torruella heard oral argument in this matter, but
did not participate in the drafting or the issuance of the panel
opinion. The opinion is therefore issued pursuant to 28 U.S.C.
46(d).

CYR, Circuit Judge. Plaintiffs-appellants Manuela CYR, Circuit Judge.

Rodr guez and family members challenge the summary judgment

entered in the United States District Court for the District of

Puerto Rico dismissing their Federal Tort Claims Act ("FTCA")

suit for damages resulting from the errant arrest and imprison-

ment of Manuela Rodr guez by the United States Marshals Service

pursuant to a valid warrant. We affirm the district court

judgment.

I I

BACKGROUND1 BACKGROUND

On March 14, 1975, in Mineola, New York, an individual

who identified herself as "Manuela Rodr guez" was arrested on

drug charges by the United States Drug Enforcement Administration

("DEA"). The arrestee provided DEA with a social security number

and the following additional information which the agents record-

ed on a standard DEA booking form: sex: female; height: 5';

weight: 140 pounds; race: white; place of birth: Maranjito

[sic], Puerto Rico; date of birth: December 29, 1942;

citizenship: United States; identifying characteristics: scar

on stomach, right-handed; eyes: brown; hair: brown; mother:

deceased; father: deceased; sister: Martha Rodriques. On April q

7, 1975, the United States District Court for the Southern

District of New York issued an arrest warrant against "Manuela


1The relevant facts are recited in the light most favorable to
plaintiffs-appellants, against whom summary judgment was entered. See
Velez-Gomez v. SMA Life Assur. Co., 8 F.3d 873, 874 (1st Cir. 1993). 

2

Rodr guez," directed to the DEA for execution. The DEA never g

located the subject.

In 1989, the United States Marshals Service became

responsible for executing DEA arrest warrants, and Deputy Marshal

Sandra Rodr guez ("Deputy Rodr guez"), Southern District of New

York ("SDNY"), was assigned to locate the subject of the 1975

arrest warrant. Sometime later, a credit bureau check by Deputy

Rodr guez yielded a fresh lead: a "Manuela Rodr guez" residing

in Bayam n, Puerto Rico, with the identical social security

number recorded in the 1975 DEA booking form.

Deputy Rodr guez promptly dispatched an "arrest packet"

to the United States Marshals Service, District of Puerto Rico

("DPR"), which included copies of the 1975 DEA booking form and a

handwritten information form prepared by the United States

Marshals Service, SDNY. Deputy Rodr guez requested the United

States Marshals Service, DPR, to "check the following lead." Her

cover memorandum summarized most of the identifying information

in the accompanying documents and included the following addi-

tional information: a/k/a Lopez, Dora Restrepo, a/k/a Restrepo,

Dora; weight: 140 (back in 1975); sister: Martha Rodr guez. g

Even though Deputy Rodr guez, just five days earlier, had shown a

photograph of the 1975 arrestee in the New York City neighborhood

where "Manuela Rodr guez" was last believed to have resided, her

cover memorandum noted: "photo not available." Nor did Deputy

Rodr guez request fingerprints for inclusion in the arrest

packet. Shortly after the arrest packet reached Puerto

3

Rico on January 26, 1990, the deputy marshals assigned to the

case, C sar Torres and Eugenio D az, requested that the United

States Marshals Service, SDNY, forward a photograph of the

subject. The record is silent as to whether fingerprints were

requested. In any event, Deputies Torres and D az once again

were advised that no photograph was available and that SDNY could

provide no additional information.

On February 8, 1990, after confirming that a Manuela

Rodr guez indeed was residing at the Bayam n address listed in

the arrest packet, Deputies Torres and D az alerted a magistrate

judge that an arrest was imminent. Later in the afternoon,

Deputies Torres and D az proceeded to the Bayam n address to

execute the arrest warrant, and identified themselves to plain-

tiff-appellant Pedro Gonzalez Martinez ("Martinez"), plaintiff

Rodr guez's husband. Martinez phoned plaintiff Rodr guez at her

place of work, and she arrived home at approximately 4:50 p.m.

At her insistence, the deputies interviewed plaintiff

Rodr guez in the presence of her family. She confirmed most of

the information provided in the arrest packet, including her full

name, social security number, birthplace, birthdate, abdominal

scar, right-handedness, and that both her parents were deceased.

Prior to her arrest, plaintiff also told the deputy marshals that

she had a sister named "Marta Rodr guez." Although the summary t g

judgment record reveals that plaintiff Rodr guez has three

siblings, including a sister named "Maria" and/or "Marta," the

only grounds asserted in opposition to summary judgment below

4

were the alleged three-inch height difference, a twenty-pound

weight difference, an additional scar on plaintiff Rodr guez's

forehead, the failure of the United States Marshals Service,

SDNY, to forward a photograph and fingerprints to Puerto Rico,

and the failure of Deputies Torres and D az to request finger-

prints.

When Deputies Torres and D az advised that they had an

arrest warrant for "Manuela Rodr guez," plaintiff protested to

no avail that she could not be the individual named in the

warrant since she had never been to New York. Immediately after

the arrest, the deputies attempted likewise to no avail to

contact a magistrate judge, then booked plaintiff and transported

her to a pretrial detention facility for incarceration pursuant

to the provisional commitment order previously issued by the

magistrate judge. The following day, February 9, plaintiff was

brought before a magistrate judge and released on personal recog-

nizance pending a removal hearing on February 13, 1990.

In anticipation of the removal hearing, Deputy D az

again requested a photograph of the 1975 arrestee from the United

States Marshals Service, SDNY. Finally, on February 10, a

photograph taken at the Mineola Police Department at the time of

the 1975 arrest was mailed to Puerto Rico. When the photograph

arrived on February 12, it was readily determined that plaintiff

Rodr guez was not the "Manuela Rodr guez" arrested in 1975. On

February 13, the government moved to dismiss all proceedings

against plaintiff Rodr guez.

5

In due course the United States Marshals Service

disallowed the administrative claim filed by plaintiffs-appel-

lants, clearing the way for the present action against the United

States for false arrest and false imprisonment based solely on

the conduct of its deputy marshals in (1) initiating, through

Deputy Rodr guez, the wrongful arrest and detention of plaintiff

Rodr guez pursuant to the 1975 arrest warrant without obtaining

or forwarding a photograph and fingerprints of the 1975 arrestee

to the District of Puerto Rico; (2) executing the arrest warrant,

through Deputies Torres and D az, without a photograph and

fingerprints of the subject and notwithstanding the height and

weight differences between plaintiff Rodr guez and the 1975

arrestee; and (3) delaying plaintiff Rodr guez's initial appear-

ance before a magistrate judge.2

The United States moved for summary judgment on all

claims. The district court ruled that plaintiffs had not gener-

ated a trialworthy dispute as to whether the arresting deputies

had a reasonable basis for believing that plaintiff Rodr guez was

the subject named in the 1975 arrest warrant. It concluded that

the arresting deputies, with valid warrant in hand, were under no

duty to corroborate their reasonable identification by obtaining

either fingerprints or a fifteen-year-old photograph and that any

failure on the part of Deputy Rodr guez to gather or forward such

information was immaterial because the information made available



2Appellants have not pursued the latter claim on appeal.

6

to Deputies Torres and D az prior to the arrest was adequate to

support a reasonable belief by the arresting deputies that

plaintiff Rodr guez was the person named in the 1975 warrant.

Plaintiffs-appellants challenge the district court

rulings, on two grounds: (1) that Deputies Torres and D az, with

neither a photograph nor the fingerprints of the 1975 arrestee,

could not have formed a reasonable belief that plaintiff Rodr -

guez was the subject of the 1975 warrant, particularly in light

of the height and weight discrepancies; and (2) that Deputy

Rodr guez negligently failed to include a photograph and finger-

prints of the 1975 arrestee in the arrest packet transmitted to

the United States Marshals Service, DPR.

The United States responds in kind. First, it claims

that Deputies Torres and D az had reasonable cause to believe

that plaintiff Rodr guez was the 1975 arrestee; hence, they were

not negligent. Second, even assuming negligent conduct on the

part of Deputy Rodr guez in the pre-arrest investigation, federal

law enforcement officers owe no duty to exercise reasonable care

in conducting pre-arrest investigations and, secondly, FTCA

2680(h) waives sovereign immunity from suit for certain

enumerated intentional torts only among them false arrest and

false imprisonment and not for mere negligent investigation.

II II

DISCUSSION DISCUSSION

A. Summary Judgment A. Summary Judgment

7

A grant of summary judgment is subject to plenary

review under the same criteria incumbent on the district court.

Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 4 (1st Cir. 1994).

Summary judgment is appropriate where the record, viewed in the

light most conducive to the party resisting summary judgment,

reveals no trialworthy issue of material fact, and the party

requesting it is entitled to judgment as a matter of law. Id.

B. Sovereign Immunity B. Sovereign Immunity

For many years the general waiver of sovereign immunity

afforded by FTCA 2674 permitted tort actions to be brought

against the United States "in the same manner and to the same

extent as [against] a private individual under like

circumstances," 28 U.S.C. 2674, except for such so-called

"intentional torts" as assault, battery, false imprisonment,

false arrest, malicious prosecution, abuse of process, libel,

slander, misrepresentation, deceit, and interference with con-

tract rights, 28 U.S.C. 2680(h). Then, in 1974 Congress

narrowed the "intentional torts" exception so as to enable

actions against the United States based on six state-law torts

assault, battery, false imprisonment, false arrest, abuse of

process and malicious prosecution arising from acts or omis-

sions of its "investigative or law enforcement officers." Id.

Thus, the United States is liable "in the same manner and to

the same extent" for a false arrest of plaintiff Rodr guez,

"as a private individual" would be in "like circumstances" under

the applicable state law.

8

C. Applicable Substantive Law C. Applicable Substantive Law

The FTCA ordains that the "law of the place" where the

act or omission occurred shall govern actions for damages against

the United States. 28 U.S.C. 1346(b). Its reference to the

"law of the place" encompasses choice-of-law principles. See

Richards v. United States, 369 U.S. 1, 11-13 (1962); In re All

Maine Asbestos Litigation, 772 F.2d 1023, 1029 (1st Cir. 1985),

cert. denied, 476 U.S. 1126 (1986). As all material acts and

omissions by Deputy Rodr guez took place in New York, we would

look to New York law for the rule of decision applicable to her

actions. New York choice-of-law principles provide that conduct-

regulating causes of action normally are governed by the law of

the place where an actionable injury is sustained. See Schultz

v. Boy Scouts of Am., Inc., 480 N.E.2d 679, 684 (N.Y. 1985). 

Any injury to plaintiff Rodr guez was sustained in

Puerto Rico. Moreover, the parties, as well as the district

court, assumed from the start that Puerto Rico law governs any

actionable claim predicated on alleged acts and omissions of

Deputy Rodr guez in New York. In these circumstances, we do

likewise, see Commercial Union Ins. Co. v. Walbrook Ins. Co.,

Ltd., 7 F.3d 1047, 1048 n.1 (1st Cir. 1993), since Puerto Rico

law bears a "reasonable relation" to all claims in litigation.

Finally, since the false arrest and false imprisonment claims

under Puerto Rico law raise no relevant distinction in the

present context, we treat them as identical causes of action.

9

Cf. Ayala v. San Juan Racing Corp., 112 P.R. Dec.804, 812 (1982).

D. The False Arrest Claims Relating D. The False Arrest Claims Relating
to Deputy Marshals Torres and D az to Deputy Marshals Torres and D az

Plaintiff Rodr guez contends that Deputies Torres and

D az subjected her to false arrest by executing the 1975 warrant

despite certain discrepancies between the physical description

given by the 1975 arrestee and the physical description and

biographical data Deputy Rodr guez provided to the arresting

officers. These discrepancies were sufficient, she argues, to

engender a reasonable doubt which the arresting deputies should

have resolved by obtaining a photograph or fingerprints of the

1975 arrestee. Their failure to do so therefore precluded

summary judgment on the central issue whether the arresting

officers could have harbored a reasonable belief that plaintiff

was the person named in the arrest warrant.

Misidentification cases comprise a distinct subset of

false arrest claims, for which particularized rules and standards

were fashioned at common law. See Restatement (Second) of Torts,

125 (1965). Even though many such claims have found their way

into the courts over the years, see William B. Johnson, Liability

for False Arrest or Imprisonment Under Warrant as Affected by

Mistake as to Identity of Person Arrested, 39 A.L.R.4th 705

(1985), careful research has disclosed no reported Puerto Rico

Supreme Court decision addressing a false arrest claim based on

the execution of a valid arrest warrant against the wrong person.

10

As a general matter, however, the Puerto Rico Supreme

Court has conformed its limited "false arrest" jurisprudence to

common law principles. See, e.g., Ayala, 112 P.R. Dec. at 813

(citing common law sources, including Restatement (Second) of

Torts); Dobbins v. Hato Rey Psychiatric Hosp., 87 P.R.R. 28, 31-

32 (1962) (citing common law sources, including Restatement,

Torts (1938)). Accordingly, consistent with our longstanding

practice in cases where the Puerto Rico court has not diverged

from common law principles, see Importers Ctr., Inc. v. Newell

Cos., Inc., 758 F.2d 17, 20 (1st Cir. 1985) (looking to Restate-

ment (Second) of Contracts (1979), absent controlling Puerto Rico

law); United States v. Marshall, 391 F.2d 880, 883 (1st Cir.

1968) (citing Restatement, Torts, where Puerto Rico Supreme Court

demonstrated pattern of reliance on common law authority), we

adopt the Restatement (Second) of Torts, 35-45A, 112-36, as

the appropriate framework for analysis of the instant false

arrest claim.

1. Conditional Privilege 1. Conditional Privilege

Generally speaking, an arrest conducted pursuant to a

valid warrant is conditionally privileged, and no false arrest

liability lies against the officers responsible. Restatement

(Second) of Torts, 118, 122 (1965). Moreover, where an

agent's privilege is "properly exercised on his principal's

behalf," the principal likewise has a defense to an action based

on the conduct of the agent. Restatement (Second) of Agency, 

11

217(a)(iii) (1958).3 The privilege attaching to the conduct of

a government employee acting within the scope of his employment

likewise has been recognized as a defense available to the United

States in actions based on the so-called intentional torts

enumerated in FTCA 2680(h). See, e.g., Arnsberg v. United

States, 757 F.2d 971, 978-79 (9th Cir. 1985) (government liabili-

ty for false arrest under FTCA determined in light of privilege

accorded law enforcement officer effecting arrest), cert. denied,

475 U.S. 1010 (1986); Caban v. United States, 728 F.2d 68, 74 (2d

Cir. 1984) (same). Thus, the United States is entitled to assert

in its defense a conditional privilege conferred upon its agent

by applicable local law in the same manner and to the same extent

as a nongovernmental principal could assert in similar circum-

stances. The legislative history accompanying the 1974 amendment

makes clear that Congress intended "to make the Government

independently liable in damages for the same type of conduct that

is alleged to have occurred in Bivens (and for which that case

imposes liability upon the individual Government officials



3Section 217. Where Principal or Agent has Immunity or Privilege Section 217. Where Principal or Agent has Immunity or Privilege

In an action against a principal based on the conduct of a In an action against a principal based on the conduct of a
servant in the course of employment: servant in the course of employment:

(a) The principal has a defense if: (a) The principal has a defense if:

. . . . . . . .

(iii) the agent had a privilege which he properly (iii) the agent had a privilege which he properly
exercised on his principal's behalf . . . . exercised on his principal's behalf . . . .

Restatement (Second) of Agency, 217(a)(iii).

12

involved)." See S. Rep. No. 588, 93d Cong., 2d Sess. 3 (1973),

reprinted in 1974 U.S.C.C.A.N. 2789, 2791 (emphasis added); see

also Bivens v. Six Unknown Named Agents of Fed. Bureau of Nar-

cotics, 403 U.S. 388 (1971).

Although it is undisputed that plaintiff Rodr guez was

arrested pursuant to a valid arrest warrant, the conditional

privilege would not insulate the arresting officers from liabili-

ty unless the arrestee was

(a) . . . a person sufficiently named or otherwise
described in the warrant and [was] reasonably believed
by the [officer] to be, the person intended, or

(b) although not such person, . . . knowingly
caused the actor[s] to believe [her] to be so.

Restatement (Second) of Torts, 125 (emphasis added). Since the

record plainly reflects that plaintiff Rodr guez maintained

throughout that she was not the person named in the 1975 warrant,

we need only inquire pursuant to subsection 125(a) whether

(1) she was "sufficiently named or otherwise described in the

warrant" and (2) Deputies Torres and D az "reasonably believed"

that she was "the person intended" in the warrant. See id.

125(a).

First and foremost, there can be no question that the

person arrested was "sufficiently named" in the 1975 arrest

warrant, see id. 125(a), which directed the arrest of a person

with the same name as plaintiff Rodr guez. A law enforcement

officer "is privileged to arrest the person to whom the name [in

the warrant] applies with complete accuracy, although the [offi-

13

cer] may have reason to suspect that a mistake has been made, and

that the person, though accurately named, is not the person

intended." Id. 125 cmt. f (emphasis added). 

The United States argues that the name in the 1975

warrant, together with the information contained in the arrest

packet, provided ample basis for Deputies Torres and D az to form

an objectively reasonable belief that plaintiff Rodr guez was the

person named in the warrant. Indeed, the information plaintiff

herself provided in response to questions from the deputies

comported in virtually every detail with the physical description

in the arrest packet, except for a three-inch discrepancy in

height and a twenty-pound difference in weight.4

We agree with the government that these slight

discrepancies minor variations between the plaintiff's physi-

cal description and the fifteen-year-old DEA booking form de-

scription could not have undermined the objective

reasonableness of the arresting deputies' belief that plaintiff

was the person named in the 1975 warrant. Furthermore, apparent-



4The arresting deputies confirmed that plaintiff Rodr guez's
birthplace, birthdate, abdominal scarring, right-handedness, citizen-
ship, race, and Social Security number were all identical to the data
contained in the arrest packet. Plaintiff even confirmed that her
sister had the same name as that which the 1975 arrestee had given for
her sister. Finally, plaintiff informed Deputies Torres and D az
that, like the 1975 arrestee, both her parents were deceased as well.

The record is silent as to whether anyone (including plaintiff)
noted the three-inch height discrepancy at the time of arrest. The
twenty-pound weight difference was reasonably attributed by the
deputies to the fact that almost fifteen years had passed since the
arrest of "Manuela Rodr guez" in Mineola, New York.

14

ly mindful of the risks inherent in executing a fifteen-year-old

arrest warrant, Deputies Torres and D az prudently attempted to

obtain further information, as well as a photograph, from the

United States Marshals Service, SDNY, but were told that no photo

or additional information was available. Indeed, the arresting

deputies even afforded plaintiff Rodr guez an opportunity to

explain how anyone other than she could have provided the DEA

with all this information in 1975. Plaintiff Rodr guez was

unable to explain then and offers no explanation now.

Their painstaking efforts could have left Deputies

Torres and D az with little inkling let alone a reasonable

belief that plaintiff Rodr guez was not the "Manuela Rodr -

guez" named in the arrest warrant. Thus, notwithstanding their

errant arrest of an innocent person, the arresting officers

having utilized every available means to preclude misidentifica-

tion were left with no grounds for forming a reasonable belief

that plaintiff Rodr guez was not the person intended in the 1975

arrest warrant. Consequently, the execution of the valid 1975

arrest warrant by Deputies Torres and D az was privileged. And,

lastly, the United States was entitled to rely on the privilege

which attached to the arresting deputy marshals as a complete

defense to liability for false arrest, as provided by Restatement

(Second) of Agency, 217(a)(iii). 

E. The Claims Relating to Deputy Rodr guez E. The Claims Relating to Deputy Rodr guez

Plaintiffs-appellants further contend that the United

States is liable for the "negligent investigation and initiation

15

of arrest proceedings" by Deputy Rodr guez. The United States

counters that federal law enforcement officers owe no legal duty

to exercise reasonable care in conducting pre-arrest investi-

gations. Additionally, it argues that FTCA 2680(h) waives

sovereign immunity from suit for six enumerated intentional torts

only -- assault, battery, false imprisonment, false arrest, abuse

of process and malicious prosecution. Thus, according to the

United States, even if local law afforded a right of action for

negligent investigation and initiation it would be barred by

sovereign immunity.

16

1. Negligent Investigation 1. Negligent Investigation

Plaintiffs-appellants point to no authority which

recognizes a right of action for "negligent investigation" in

these circumstances, nor have we found any authority for imposing

liability on the sovereign for negligent investigation, whereas

several courts have rejected such claims. See, e.g., Smith v.

State, 324 N.W.2d 299, 302 (Iowa 1982); Landeros v. City of

Tucson, 831 P.2d 850, 851 (Ariz. App. Ct. 1992); Wimer v. State,

841 P.2d 453, 455 (Idaho App. Ct. 1992); cf. Bernard v. United

States, 25 F.3d 98, 102 (2d Cir. 1994) (applying New York law in

FTCA action and rejecting claim that law enforcement officers

failed to exercise due care in effecting arrest); Boose v. City

of Rochester, 421 N.Y.S.2d 740, 744 (N.Y. App. Div. 1979) (ruling

that plaintiff "may not recover under broad general principles of

negligence . . . but must proceed by way of the traditional

remedies of false arrest and imprisonment and malicious

prosecution"). We therefore decline the invitation to speculate

that the Puerto Rico Supreme Court would be receptive to such a

claim.

2. Instigation of False Arrest 2. Instigation of False Arrest

Plaintiffs-appellants cite Sami v. United States, 617

F.2d 755 (D.C. Cir. 1979), as support for their contention that

the United States may be sued for the conduct of Deputy Rodr guez

in initiating the errant arrest. Sami held that FTCA 2680(h)

opens the government to suit for false arrest even though its law

enforcement officer was not directly involved in "frontline law

17

enforcement work." See id. at 764; but cf. Pooler v. United

States, 787 F.2d 868, 872 (3d Cir.) (restricting waiver of

sovereign immunity effected under FTCA 2680(h) to enumerated

torts by investigative or law enforcement officers "in the course

of a search, a seizure or an arrest"), cert. denied, 479 U.S. 849

(1986). We need not resolve the question addressed in Sami,

however, since we conclude that no right of action would lie

under the legal principles likely to be applied by the Puerto

Rico Supreme Court based on the conduct of Deputy Rodr guez.

One who instigates or participates in the unlawful

confinement of another is subject to liability to the other for

false arrest. Restatement (Second) of Torts, 45A. "Instiga-

tion" is defined as "words or acts which direct, request, invite

or encourage the false [arrest] itself." Id. 45A cmt. c. "In

the case of an arrest, [instigation] is the equivalent, in words

or conduct, of 'Officer, arrest that man!'" Id. Though it is by

no means clear that Deputy Rodr guez's request to "check the

following lead," see supra p. 3, amounted to "instigation" as

defined in the Restatement, we consider whether Deputy Rodr guez

herself would be liable for instigating a false arrest of plain-

tiff Rodr guez in these circumstances.

Instigation of false arrest, like the underlying tort

itself, is subject to the conditional privilege accorded arrests

effected pursuant to a valid warrant. Id. 45A cmt. b. Conse-

quently, the conduct of Deputy Rodr guez would be privileged so

long as the arrestee was "sufficiently named or otherwise de-

18

scribed in the warrant" and the officer instigating the arrest

"reasonably believed" that plaintiff Rodr guez was "the person

intended" in the arrest warrant. Id. 125(a); see id. 45A

cmt. b.

As noted above, see supra p. 13, there is no question

but that plaintiff Rodr guez was "sufficiently named" in the 1975

warrant. Nor did the evidence developed at summary judgment

generate a trialworthy dispute as to whether Deputy Rodr guez

"reasonably believed" that the person identified in the arrest

packet she forwarded to Puerto Rico was the person intended by

the 1975 arrest warrant. See id. 125 cmt f. Moreover, plain-

tiffs-appellants have never suggested, either below or on appeal,

that their opportunity to conduct discovery was inadequate.

The record evidence reflects that Deputy Rodr guez

matched the name and social security number of the fugitive with

the name and social security number of an individual residing in

Puerto Rico. The arrest packet Deputy Rodr guez forwarded to

Puerto Rico included extensive personal and family information

provided by the "Manuela Rodr guez" arrested in 1975, which

matched almost precisely the personal and family information

gathered on plaintiff Rodr guez in 1990. There were two minor

discrepancies between the information provided by the 1975

arrestee and that provided by plaintiff Rodr guez: a three-inch

height difference and a twenty-pound weight difference. But

there is no record evidence whatsoever to suggest that Deputy

Rodr guez was even aware of these discrepancies.

19

Thus, the information forwarded by Deputy Rodr guez,

when matched with the information relating to plaintiff Rodr guez

herself, afforded ample basis for forming an objectively reason-

able belief that plaintiff Rodr guez was the person named in the

1975 arrest warrant. Consequently, Deputy Rodr guez's conduct

relating to the errant arrest, even assuming it were actionable

as a negligent instigation claim, would be conditionally privi-

leged, see Restatement (Second) of Torts, 125(a), and the

United States would be entitled to assert the privilege in its

own defense. See supra pp. 11-15; Restatement (Second) of

Agency, 217(a)(iii).5

III III

CONCLUSION CONCLUSION

As the challenged conduct of all three Deputy United

States Marshals was privileged, summary judgment was properly

entered for the United States.

Affirmed. The parties shall bear their own costs. Affirmed. The parties shall bear their own costs.

- Concurring Opinion Follows -



5Nevertheless, given the many uncontrolled ramps leading onto and
off the "information highway," Judge Bownes' wise counsel clearly
offers law enforcement agencies the best means of avoiding recurrences
of the insufficiently explained wrong done in this case. As my
brother cautions, all law enforcement officers whether directly
involved in effecting an arrest or simply in gathering and forwarding
information for use by the arresting officers should exercise the
high degree of care commensurate with the seriousness of their mis-
sion.

20

BOWNES, Senior Circuit Judge, concurring in the BOWNES, Senior Circuit Judge

judgment. I agree with the judgment mainly because there was

an improbably close match between the information provided by

the plaintiff and the detailed information in the arrest

packet. Given this level of specificity and similarity, I

must conclude that it would be entirely unreasonable for a

finder-of-fact to posit liability against the government. It

was not the government which was culpable but the impostor

who framed the plaintiff some fifteen years before the ar-

rest.

I write separately, however, to emphasize that the

Restatement principles underlying our decision should not be

applied mechanically where multiple government actors are

engaged in collective action. In my view, it would be a

mistake to treat the New York and Puerto Rico marshals piece-

meal, as isolated actors rather than as co-agents of a common

principal. Under the right circumstances, co-agents may have

a duty to exchange certain information; where there is such a

duty, the reasonableness of a given act -- and the princi-

pal's liability for that act -- should be judged in light of

what the actor knew or should have known, assuming the rea-

sonable conduct of other concerned actors. This concept of

imputed knowledge seems consistent with agency and vicarious

liability principles.

20

The failings of the piecemeal approach can be

illustrated using the facts of this case. A piece of infor-

mation may mean little in the abstract to the person who

holds it, but might be decisive to another actor in context.

In this case, a photograph remained inert in Deputy Rodri-

guez's file; had it been forwarded to the Puerto Rico mar-

shals in the field, it would have prevented the plaintiff's

arrest. Although I agree with my brother that, in light of

the specificity of the information in her arrest packet,

Deputy Rodriguez had no reason to fear that the wrong person

might be arrested, the opinion nevertheless obscures the

government's one regrettable omission. After all, the Puerto

Rico marshals saw fit to request the photograph; and the

United States has never explained why it was not timely sent.

I doubt that common law principles either dictate a

piecemeal approach, or foreclose a more integrated view of

collective action. Indeed, my brother's opinion momentarily

adopts an integrated view when it rejects the instigation

claim against Deputy Rodriguez. See ante at 18 ("The arrest

packet Deputy Rodriguez forwarded to Puerto Rico . . .

matched almost precisely the personal and family information

gathered on plaintiff Rodriguez in 1990."). This correspon-

dence matters only if Deputy Rodriguez is imputed with the

21

knowledge of information that was gathered solely by the

Puerto Rico marshals.

In sum, I have no quarrel with the bulk of my

brother's scholarly opinion. I merely wish to raise a word

of caution against judging co-agents of a common principal as

isolated actors; their actions should be assessed as of one

piece.

22