UNITED STATES of America, Defendant, Appellant,

v.

Florence MARSHALL, Plaintiff, Appellee.

No. 6888.

United States Court of Appeals First Circuit.

March 27, 1968.

----

John C. Eldridge, Washington, D. C., Attorney with whom Edwin L. Weisl, Jr., Asst. Atty. Gen., Carl Eardley, Acting Asst. Atty. Gen., Francisco A. Gil, Jr., U. S. Atty., and Alan S. Rosenthal and Robert C. McDiarmid, Washington, D. C., Attys., Dept. of Justice, were on brief, for appellant.

Harvey B. Nachman, San Juan, P. R., with whom Nachman, Feldstein, Laffitte & Smith, San Juan, P. R., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant, United States of America, appeals from a judgment in the sum of $45,500 entered against it by the district court under the Federal Torts Claims Act.[1]

The plaintiff, Florence Marshall, was playing golf at Ramey Air Force Base, Puerto Rico, on July 7, 1963, in the company of Victor House and at the invitation of one Captain Flood, an officer at the base. She had played the Ramey course some six to nine times before. As she began to play the 17th hole, plaintiff was caught in a sudden rain storm. It happens that the 17th hole at Ramey has separate teeing areas for men and women. Mrs. Marshall got into a covered golf cart that she and House had been using and drove over to the men's tee to meet him. In so doing

1. 28 U.S.C. § 1346(b).

she moved in a direction opposite to the ordinary flow of travel in that area and also passed a shelter just off the 16th green that had been especially provided as a protection against sudden storms.

When House got into the cart plaintiff chose to drive not to the shelter but to a large almond tree that was nearer. In order to approach the tree they had to drive through tall grass or "rough" that was three to four feet high. Upon entering the rough, they discovered to their dismay that far from being on even ground, they were careening down the side of a hill into a deep ravine. The injuries Mrs. Marshall incurred in this mischance gave rise to the present controversy.

Among the findings of fact by the district court, the following are especially pertinent.

"13. The ravine was not apparent and was unnoticable by any person walking or riding toward the almond tree or the tall grass from the direction in which Mrs. Marshall came. It was completely hidden from view by tall grass.

"14. Neither the Golf Club nor the Corps of Engineers of the United States Air Force, which maintain the golf course, erected any warning, signs, guardrails or fences, to protect persons lawfully on the premises from falling into the ravine.

"15. At no time was any oral warning given to Mrs. Marshall as to the existence of this hazardous condition on the playing course. The United States of America, through its agency, United States Air Force, was negligent in the maintenance of the golf course and in failing to warn lawful visitors on its land of the hazardous and dangerous condition.

"16. The plaintiff, Mrs. Marshall, was not negligent in any way in the causation of the occurrence."

Plaintiff in urging affirmance of the judgment relies upon three distinct lines of reasoning. First, she suggests that Puerto Rico does not recognize the distinction between the duty of care owed to a "licensee" and that owed to an invitee; that even assuming she was merely a social guest, the applicable standard is one of ordinary reasonable care rather than some lesser standard. Secondly, that even if Puerto Rico were to distinguish between licensees and invitees, it would, contrary to the weight of American authority but in accordance with the law of Louisiana, classify a social guest as an invitee. Lastly, that even if Puerto Rico recognizes the distinction between licensees and invitees, and if plaintiff is classified as a licensee, the judgment of the district court must be affirmed because the defendant was negligent even by the standard applicable to licensees.

■ The district court refused to admit evidence offered by the defendant to show that plaintiff was merely a social guest principally on the ground that the above stated distinctions in status are foreign to the law of Puerto Rico.[2] Plaintiff seeks to buttress this ruling with a discussion to the effect that the Puerto Rican courts would not make such a distinction, because they are not bound by the refinements of American jurisprudence. The fact is that even a cursory inspection of the cases cited in the briefs for both sides makes it plain that the insular courts do make such a distinction, e. g., Goose v. Hilton Hotels, Int'l, Inc., 79 P.R.R. 494, 498–500 (1956); Palmer v. Barreras, 73 P.R.R. 260, 270 n. 1 (1952); Tavarez v. San Juan Lodge, 68 P.R.R. 681, 689–690 (1948).

Plaintiff argues that what is said in these cases with reference to the distinction is dictum and need not be regarded as controlling. It is true that in these three cases the court while concluding that the plaintiff was an invitee

---

2. Despite this, enough appears in the record to make it plain that plaintiff was indeed a social guest only.

rested its decision on other grounds but this does not proleptically reduce its discussion of the distinction to the level of dictum. In any event, the court's observations in these cases were too deliberate to be dismissed as "mere dictum" whatever their technical designation. See Wright Federal Courts 205 (1963).

Next, plaintiff maintains that in any event the Puerto Rican courts would follow the example of Louisiana and regard a social guest as an invitee rather than a licensee, citing Foggin v. General Guar. Ins. Co., 250 La. 347, 195 So.2d 636 (1967). While the precise point does not appear to have been decided in Puerto Rico, we are not entirely without illumination as to what the attitude of the Commonwealth courts would be. Far from being reluctant to appeal to sources based on the common law, the Supreme Court of Puerto Rico, in the three cases referred to, relied exclusively on common law authority, apart from citations to its own prior opinions. For example, in Palmer v. Barreras, supra at 270 n. 1 we read: "For the higher duty of care owned to an invitee as against a licensee, see Tavarez v. San Juan Lodge, 68 P.R.R. 681, 689–90; United States v. Hull, 195 F.2d 64 (C.A. 1, March 19, 1952); Restatement, Torts, Vol. II, §§ 330–32, 343, Comment a, pp. 939–40; Prosser on Torts, pp. 625–43; Eldredge, Landlord's Tort Liability for Disrepair, 84 U.Pa.L. Rev. 467, 470."

*Tavarez* cites additional common law sources; *Hull* deals with Massachusetts law and the other authorities referred to obviously have a common law basis. Throughout these cases citations indicating that Puerto Rico takes a view of the invitee-licensee distinction different from that of the common law are conspicuously absent. For instance, in *Goose,* supra at 498, there is reference to several state court decisions including Kansas and South Carolina. Louisiana is not mentioned.

Admittedly it does not necessarily follow that the Puerto Rican courts would have followed the same authorities if the precise question of whether a social guest is a licensee or an invitee had been presented in *Tavarez* or *Barreras.* Since, however, the Commonwealth courts have shown a strong tendency to follow the prevailing American view in this general area, more than a mere recital of the vague affinity between the legal heritages of Puerto Rico and Louisiana will be required to persuade us that Puerto Rico would part company on this particular point.

Finally, plaintiff contends that defendant was negligent even by the standard of care owed to a licensee. This standard is set out in 2 Restatement of Torts (Second) § 342 (1965):

"§ 342. Dangerous Conditions Known to Possessor

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved." [3]

---

3. Defendant argues for an even less severe standard, citing Canadian Nat'l Ry. Co. v. Conley, 226 F.2d 451, 458–459 (1st Cir. 1955) (concurring opinion). We cannot regard that case as having continued vitality on this precise point, however, because it cites the earlier and somewhat different version of the Restatement.

But see Prosser, Law of Torts 390 (3rd ed. 1964): "The duty [to licensees] arises only when the occupier has actual knowledge of the risk, although this may be shown by circumstantial evidence, and he is held to the standard of a reasonable man in realizing the significance of what he has discovered."

Whether the defendant should have realized that an unreasonable risk of harm was involved depends upon several considerations:

1. Was the danger apparent to one golfing in that area?
2. Was plaintiff justified in driving a golf cart into the rough?
3. Was plaintiff justified in seeking protection from the rain under a tree rather than in the shelter provided specifically for the purpose?

These last two questions obviously involve considerations of contributory negligence. But in Puerto Rico, "[c]oncurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." 31 L.P.R.A. § 5141.

 The district court found as a fact that the ravine was not apparent to one coming from the direction in which the plaintiff came and we will not set aside such a finding unless clearly erroneous. Fed.R.Civ.P. 52(a). Defendant, however, maintains that the issue is not what can be seen by one travelling in the direction that plaintiff did but rather by one travelling in the usual direction from the 17th men's tee to the 17th green. Apparently the basis for this distinction is that the 17th men's tee overlooks the ravine and the 17th women's tee does not. Thus, one travelling the same route as plaintiff but in the opposite direction has the advantage of having seen the ravine and presumably recognizing the danger lurking behind the nearby almond tree. Defendant suggests that it had no obligation to anticipate that someone would travel that route in the direction opposite to the ordinary flow of traffic.

We find this reasoning unconvincing. The fact that ordinarily one would not have occasion to go from the women's tee to the men's does not make it the equivalent of a one way street. Many by no means farfetched circumstances might occasion one to travel in the opposite direction. The circumstances in the present case are but one instance of this. If it be assumed that the ravine represented an unreasonable risk of harm to a licensee going in the direction travelled by plaintiff, defendant will not be shielded by the fact that ordinarily one travels in the opposite direction. But cf. Farfour v. Mimosa Golf Club, Inc., 240 N.C. 159, 81 S.E.2d 375 (1954).

But was the risk of harm unreasonable? The finding of the district court that the plaintiff could not see the ravine, while not an inevitable finding, is supported by the evidence. Plaintiff herself testified that she was unaware of the existence of a ravine. House testified that he did not know that the ravine extended to the area behind the almond tree, even though he had had the advantage of the view from the nearby men's tee. The district court was entitled to credit these witnesses, especially House, who obviously had an interest in avoiding the unexpected trip into the ravine. Moreover, several of the other witnesses seemed ambiguous as to whether one who came from the direction from which plaintiff came would know that the almond tree was growing out of the side of the ravine.

Still, from the assumption that plaintiff was unable to see the ravine, the liability of the defendant does not automatically follow. The question then is whether the defendant was bound to anticipate that someone would drive a golf cart into the rough. Thus, the question of defendant's primary negligence and of plaintiff's concurrent imprudence are inextricably intertwined.[4]

---

4. We have been unable to discover any case presenting the same factual situation as is now before us but Farfour v. Mimosa Golf Club, Inc., supra is similar enough to be instructive. There, plaintiff, who had stepped in a hole on a golf course, was nonsuited in the trial court. The Supreme Court of North Carolina affirmed, emphasizing the following points, among others: (1) The place where the hole was located was not part of the terrain designed for playing golf. (2) Plaintiff, instead of following the established path from the ninth green to the tenth tee took a short cut and enroute parked his caddie cart at a place in high grass.

First, we think that plaintiff's decision not to go to the nearby shelter herself but rather to go in the cart to pick up House does not bar her recovery. This instinctive act in no way surrendered prudence to charity. Further, since from the point where plaintiff picked up House the tree was somewhat nearer than the shelter, it is understandable that they would seek protection from the rain there. Under the circumstances it was not necessarily negligent to go under a tree to avoid the unexpected downpour even if there is a rain shelter in the general area.

Plaintiff, however, did not merely seek the shelter of a tree. She drove in a golf cart and indeed drove into rough to get to the tree. Moreover, this was not merely rough in the technical sense that it was not part of the fairway; it was a sort of jungle three or four feet high and different in type from the golf course grass. Plaintiff was unable to see the ravine precisely because the rough was of eye level height, or nearly so, to one sitting in a golf cart. Still, plaintiff in no way protected herself from whatever this formidable thickness might conceal. If conceivably it could be anticipated that a player might drive a golf cart into the rough in some circumstances, we doubt whether even as to a licensee there could be a duty to expect one to drive into rough of this character absent a compelling urgency. Whatever might have been the case had there been no shelter available other than the tree, we hold as a matter of law that there was no breach of duty towards this plaintiff.

Thus we conclude that the judgment of the district court must be set aside. For the action of the plaintiff does not merely constitute "concurrent imprudence of the party aggrieved"; rather, since the defendant could not be expected to anticipate that the plaintiff would behave in that manner, there was no primary negligence on the part of defendant.

Judgment will be entered vacating the judgment of the District Court and remanding the case to that Court with directions to enter judgment for the defendant; the defendant recovers costs on appeal.

The court considered this factor from two different perspectives: first, that the owner of the golf course was under no obligation to foresee that someone would travel in this area. Secondly, that it was contributory negligence on the part of the plaintiff to do so. Further, in *Farfour*, plaintiff was a dues paying member, a business invitee, whereas in the case at bar plaintiff is a licensee.