**IMPORTERS CENTER, INC.,**
**Plaintiff, Appellant,**

v.

**NEWELL COMPANIES, INC.,**
**Defendant, Appellee.**

**No. 84–1250.**

United States Court of Appeals,
First Circuit.

Argued Oct. 1, 1984.

Decided March 28, 1985.

A.J. Amadeo Murga, Hato Rey, P.R., for plaintiff, appellant.

---

Rafael Escalera Rodriguez, San Juan, P.R., with whom Gerardo Pavia and Lasa, Escalera & Reichard, San Juan, P.R., were on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge and WEIGEL,* Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from a judgment of the United States District Court for the District of Puerto Rico awarding plaintiff-appellant, Importers Center, Inc. ("Importers") six months' rent as damages for a breach by defendant-appellee, Newell Companies, Inc. ("Newell") of its lease of Importers' industrial buildings, 581 F.Supp. 1110. Importers asserts on appeal that the district court misunderstood and misapplied the Puerto Rico law of damages.

Importers is the owner of two industrial buildings in Rio Piedras, Puerto Rico. Effective August 1, 1981, Importers and Newell entered into a lease agreement under which the former leased 13,284 square feet of space to Newell for five years at $3,597.75 per month for the first two years, and $3,708.45 per month for the remaining three years.

In December 1981 Newell abandoned the premises. Newell paid the stipulated rent through March 1982, and thereafter ceased paying rent altogether. Importers then made some unsuccessful efforts to find other persons to whom to lease the property, offering it to them at or above the contract price, but did not offer to rent at less than that price. As of the date of the judgment below, the property remained vacant.

On December 17, 1982, Importers filed the present action. In its complaint and throughout the proceedings below, Importers contended that it was entitled to all unpaid rents, accrued and unaccrued, for the full term of the lease.[1] Newell has argued throughout that Importers was not so entitled. The lease agreement contains nothing that relates specifically to the measure of damages in the event of a default such as has occurred here.

On October 19, 1983, the district court ordered the parties to submit memoranda in support of their positions on the question of damages. In its memorandum, Newell argued that Importers was limited in the damages it could recover to the amount of actual damages caused by Newell's default. Actual damages would be equal to the lease rent during the period Importers could be expected to be forced to spend to find a new tenant—the so-called market absorption period—plus the difference for the remaining period of the lease between the lease rent and the market rent, defined as the rent that the property would most probably command on the open market. On November 17, 1983, the district court issued an order accepting Newell's theory of damages.

At an evidentiary hearing on the issue of damages, held on January 18, 1984, Newell offered the opinion of its expert, Robert McCloskey, on the questions of absorption period and market rent. Importers stipulated to McCloskey's qualifications and offered no expert of its own. Importers did, however, seek to present witnesses to testify to its unavailing efforts to relet the premises, but the district court refused to allow them to take the stand. McCloskey submitted a lengthy report that concluded that the market rent for the property was the same as the contract rent, and that the absorption period for the property was 30 to 90 days, but should in no event exceed 180 days. Accordingly, the district court awarded Importers $21,586.50 plus legal interest, representing six months' rent.

---

* Of the Northern District of California, sitting by designation.

1. Thus in its complaint, Importers sought to recover the nine unpaid rental installments that were already in arrears (from April 1982 through December 1982) plus a sum equal to all the installments that would become due in the future during the remaining life of the lease, which expires by its terms on July 31, 1986. The lease agreement itself says nothing about acceleration of the monthly installments in the event of a default.

The chief issue on appeal is whether the district court erred in computing damages in this manner, although we must also consider Newell's contention that, on appeal, Importers has impermissibly altered its legal position.

Both parties agree that the measure of damages is governed by two provisions in the Civil Code of Puerto Rico, Article 1054, 31 L.P.R. § 3018, which reads:

> Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulation of the same, shall be subject to indemnify for the losses and damages caused thereby,

and Article 1446, 31 L.P.R. § 4053, which reads,

> If the lessor or lessee should not comply with the obligations mentioned in the preceding sections, they may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force.

■ On appeal Importers has backed away from its claim that it should recover not only all rents due up to the time of trial but all rents becoming due thereafter, until expiration of the lease. It now argues that the appropriate measure of damages under the Civil Code of Puerto Rico is the sum of the accrued unpaid rents up to the date of judgment, plus six additional months' rent as an estimate of its damages for the remaining period of the lease. Newell argues, *inter alia*, that this theory comes too late because it was not raised below.

We do not think that Importers' revised theory of damages raises a new issue impermissibly on appeal. What Importers seems really to be doing is giving up its original claim of entitlement to all rents due for the full term of the lease, and accepting Newell's and the court's theory that it is entitled only to actual damages.[2] The reason Importers' computation of its actual damages exceeds Newell's is not that it any longer disagrees that it is only entitled to actual damages, but that it differs on how this theory should be applied. In particular, Importers contends that it must be credited with having fully attempted to mitigate damages through the date of judgment, entitling it to all the rents due for that period. There is no question that Importers raised the issue of mitigation of damages below: in its complaint it claimed to have made reasonable efforts to lease the property, and in its trial brief it listed witnesses who would testify to its efforts "to find a prospective lessee for the property," with an offer of proof as to their testimony when the court declined to hear them.

Importers argues, in effect, that actual damages means the actual number of dollars it lost that can be fairly traced to Newell's breach. Importers states that it indeed made reasonable efforts to relet the premises at the contract rate but had had no success up to the time of trial. Under this theory, its actual damages from Newell's breach are the total lease rent up to the time of trial plus an estimate of future damages representing lost rent until the premises can be expected to be relet or the lease expires. As to future damages, Importers accepts McCloskey's conclusion that the premises can be relet within at most six months, and requests six months'

---

**2.** Importers' belated concession that it may recover only actual damages seems more realistic than its stance at trial. While arguably, under Article 1446, a lessor may elect to leave the contract in force, sit back and collect each month's rent as it becomes due under the lease, Importers could have taken that position only if it had, in fact, left the contract in full force. Here Importers says that it showed the property to prospective new tenants and made efforts to lease it. These acts would seem sufficiently to have manifested an intention to rescind the contract, leaving Importers solely with a claim for losses and damages. *See* 1 J. Puig Brutau, *Fundamentos de Derecho Civil* vol. 2, at 143 (1976).

In any case, the above matters are now redundant in light of Importers' concession that it cannot recover the rents due for the full term of the lease without making proper allowance for what the premises were worth to it after their return to its control. The only matter left in contention is Importers' claim that the court should have credited it with reasonable efforts to mitigate.

rent as an estimate of damages likely to occur after the time of trial.

Not surprisingly, Newell has a very different view of the implications of the duty to mitigate for the assessment of damages. In its brief, Newell argues that Puerto Rico recognizes the duty, but Newell purports to limit the scope of its argument to rebutting Importers' abandoned position below that it was entitled to collect all rents due under the lease for the remainder of its term regardless of any efforts it made to relet the property. Newell appears to regard evidence of Importers' efforts to mitigate as irrelevant to determining the property's true rental value in Importers' hands.

Like Newell, the district court evidently regarded evidence of mitigation as irrelevant. In its opinion of November 17, 1983 upholding Newell's position that Importers was entitled only to its actual damages, the court quoted with approval the following passage from Newell's memorandum on the issue of damages:

> Plaintiff would have to show through expert testimony what is the fair market value of the lease. Plaintiff will be entitled to recover the difference between that market value and the contractual rent, if any, for the period between default and judgment. The difference between the unaccrued contractual rents and the market value of the lease from judgment to the end of the contractual term is subject to a computation of actual value.

After the evidentiary hearing on January 18, 1984, the district court chastised Importers for failing to follow this approach, in that Importers offered no expert of its own. The court said,

> At the evidentiary hearing held on January 18, 1984, plaintiff did not present any expert testimony. According to plaintiff's offer of proof, its three announced witnesses would have testified that after defendant's default plaintiff did not offer the property for lease at a rate below the contractual rent, and that

it never instructed its agents that said rent was the only one acceptable. Plaintiff admitted that it had no evidence at all on the actual market value of the property for rent purposes.

(Footnote omitted.)

■ Judging from the above-quoted passage, the court felt that a landlord was limited in his recovery to the difference between his property's rental value under the lease and its market rental value, plus the lease rent for the absorption period, even if after making reasonable efforts he could not relet it. On this view, evidence of Importers' efforts to mitigate its damages was irrelevant as a matter of law. The court, therefore, limited the evidence to expert testimony on the absorption period and market rent and did not allow Importers to present witnesses to testify to its efforts to relet the property. We think the district court erred in so doing.

The ultimate fact to be determined is the amount of the landlord's damages that are the result of the breach of the lease. If the landlord can show that, notwithstanding his reasonable efforts, he was unable to relet prior to the time damages are being computed, his loss of rent is the result of the breach, and he is entitled to recover it. The common law rule, as stated in *Restatement (Second) of Contracts* § 350 (1979), is clear:[3]

> (1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.
>
> (2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss.

We conclude that while the views of an expert with respect to market conditions are also pertinent, the court should not refuse to hear and consider such probative evidence as the landlord may offer tending

---

**3.** No Puerto Rico or civil law authority has been called to our attention suggesting that any different rule would apply in these particular circumstances in the jurisprudence of Puerto Rico.

to show the efforts he in fact took, and their reasonableness, in order to mitigate damages by renting the premises.

In saying this we are referring only to the period *before* the court's assessment of damages. A distinction must be drawn between that period *before* assessment of damages and the period thereafter, for the remainder of the lease. If the court were faced only with determining future damages, its exclusive reliance on an expert's study of the local rental market would be unexceptionable. Future damages, after all, can only be a court's educated guess as to the difference between the rent a landlord is entitled to under the lease and the rent the property will probably command on the market if reasonable efforts are taken to relet it. *See, e.g., Sagamore Corp. v. Willcutt,* 120 Conn. 315, 180 A. 464 (1935); *cf.* 5 A. Corbin, *Corbin on Contracts* § 1053 (1964). Such a determination is necessarily speculative; before the fact, one cannot know as a matter of certainty how much a property will fetch or whether or not it can be rented at all. As, however, it would be administratively cumbersome to postpone the assessment of damages until the lease period has run, it is proper to formulate future damages on the basis of expert opinion.

█ As to past damages, however, evidence based on actual experience is also available. A landlord who has made reasonable but unavailing efforts to relet his property is entitled to recover the full amount of his lost rent. An expert's views of the rental market may help in evaluating whether a landlord's efforts to relet were reasonable, but these views are simply evidence to be weighed with the other evidence in the case. An expert's opinion that the premises could have been rented readily at the lease rate does not establish irrefutably that the landlord failed to take reasonable efforts to relet it. The landlord is entitled to show what efforts he made, and to try to convince the trier of fact that these were a reasonable and sufficient effort to mitigate.[4] This, of course, ultimately presents an issue which like other contested issues will be resolved by the trier after weighing all the relevant evidence.

Because the district court was required to assess both Importers' damages prior to the time of trial and those likely to result after trial, if any, it erred when it did not allow Importers to present witnesses to testify to Importers' past efforts to relet the premises. The court's assessment of six months' rent as Importers' actual damages may ultimately prove correct, but Importers is entitled to present its evidence to try to convince the court that it made reasonable efforts to relet the premises, and should therefore recover the rents due under the lease for such past period.[5] With respect to the post-trial period, the court may, if it so determines, reassess the appropriate damages taking into account any revised analysis of damages for the earlier period and any additional evidence it wishes to receive.

*Vacated and remanded for proceedings not inconsistent herewith.*

---

4. We note that Newell's expert, McCloskey, was of the opinion that the rent in the lease was also the going market rent and that the premises could have been rented *at the same rent* within 30 to 90 days, but in no event more than 180 days. If McCloskey was right, there seems to have been no need for Importers to have lowered the rent despite the district court's remarks to that effect. Of course, it may be that Importers' failure to find a tenant was due to the insufficiency of its efforts, but this cannot be determined without first examining the evidence it wishes to submit on the sufficiency of its efforts.

5. We are not impressed with Importers' argument that this court should now rule on the present record that the steps Importers took to lease the premises were sufficient, as a matter of law, to entitle it to recover the full lease rent for the period up to trial. While the district court erred in refusing to hear Importers' witnesses on this subject, necessitating a remand, the question of mitigation is chiefly one of fact for the district court. The present incomplete record in no way compels the ruling Importers seeks.