Manuela **RODRIGUEZ, et al.,**
**Plaintiffs, Appellants,**

v.

**UNITED STATES of America,**
**Defendant, Appellee.**

No. 94–1369.

United States Court of Appeals,
First Circuit.

Heard Oct. 3, 1994.

Decided May 15, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied July 17, 1995.

Juan Rafael Gonzalez–Munoz, with whom Gonzalez Munoz Law Office, Hato Rey, PR, Gerardo Pavia–Cabanillas and Moreda & Moreda, San Juan, PR, were on brief, for appellants.

Peter R. Maier, Atty., Guillermo Gil, U.S. Atty., Frank W. Hunger, Asst. U.S. Atty., Washington, DC, and Robert S. Greenspan, Hull, MA, Atty., were on brief, for appellee.

Before TORRUELLA,* Chief Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

---

* Chief Judge Torruella heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel opinion. The opinion is therefore issued pursuant to 28 U.S.C. § 46(d).

CYR, Circuit Judge.

Plaintiffs-appellants—Manuela Rodríguez and family members—challenge the summary judgment entered in the United States District Court for the District of Puerto Rico dismissing their Federal Tort Claims Act ("FTCA") suit for damages resulting from the errant arrest and imprisonment of Manuela Rodríguez by the United States Marshals Service pursuant to a valid warrant. We affirm the district court judgment.

# I

## BACKGROUND [1]

On March 14, 1975, in Mineola, New York, an individual who identified herself as "Manuela Rodríguez" was arrested on drug charges by the United States Drug Enforcement Administration ("DEA"). The arrestee provided DEA with a social security number and the following additional information which the agents recorded on a standard DEA booking form: *sex:* female; *height:* 5′; *weight:* 140 pounds; *race:* white; *place of birth:* Maranjito [sic], Puerto Rico; *date of birth:* December 29, 1942; *citizenship:* United States; *identifying characteristics:* scar on stomach, right-handed; *eyes:* brown; *hair:* brown; *mother:* deceased; *father:* deceased; *sister:* Martha Rodriques. On April 7, 1975, the United States District Court for the Southern District of New York issued an arrest warrant against "Manuela Rodríguez," directed to the DEA for execution. The DEA never located the subject.

In 1989, the United States Marshals Service became responsible for executing DEA arrest warrants, and Deputy Marshal Sandra Rodríguez ("Deputy Rodríguez"), Southern District of New York ("SDNY"), was assigned to locate the subject of the 1975 arrest warrant. Sometime later, a credit bureau check by Deputy Rodríguez yielded a fresh lead: a "Manuela Rodríguez" residing in Bayamón, Puerto Rico, with the identical social security number recorded in the 1975 DEA booking form.

Deputy Rodríguez promptly dispatched an "arrest packet" to the United States Marshals Service, District of Puerto Rico ("DPR"), which included copies of the 1975 DEA booking form and a handwritten information form prepared by the United States Marshals Service, SDNY. Deputy Rodríguez requested the United States Marshals Service, DPR, to "check the following lead." Her cover memorandum summarized most of the identifying information in the accompanying documents and included the following additional information: *a/k/a Lopez, Dora Restrepo, a/k/a Restrepo, Dora;* weight: 140 (*back in* 1975); sister: Martha Rodríguez. Even though Deputy Rodríguez, just five days earlier, had shown a photograph of the 1975 arrestee in the New York City neighborhood where "Manuela Rodríguez" was last believed to have resided, her cover memorandum noted: "photo not available." Nor did Deputy Rodríguez request fingerprints for inclusion in the arrest packet.

Shortly after the arrest packet reached Puerto Rico on January 26, 1990, the deputy marshals assigned to the case, César Torres and Eugenio Díaz, requested that the United States Marshals Service, SDNY, forward a photograph of the subject. The record is silent as to whether fingerprints were requested. In any event, Deputies Torres and Díaz once again were advised that no photograph was available and that SDNY could provide no additional information.

On February 8, 1990, after confirming that a Manuela Rodríguez indeed was residing at the Bayamón address listed in the arrest packet, Deputies Torres and Díaz alerted a magistrate judge that an arrest was imminent. Later in the afternoon, Deputies Torres and Díaz proceeded to the Bayamón address to execute the arrest warrant, and identified themselves to plaintiff-appellant Pedro Gonzalez Martinez ("Martinez"), plaintiff Rodríguez's husband. Martinez phoned plaintiff Rodríguez at her place of work, and she arrived home at approximately 4:50 p.m.

At her insistence, the deputies interviewed plaintiff Rodríguez in the presence of her

---

1. The relevant facts are recited in the light most favorable to plaintiffs-appellants, against whom summary judgment was entered. *See Velez-Go-* *mez v. SMA Life Assur. Co.,* 8 F.3d 873, 874 (1st Cir.1993).

family. She confirmed most of the information provided in the arrest packet, including her full name, social security number, birthplace, birthdate, abdominal scar, right-handedness, and that both her parents were deceased. Prior to her arrest, plaintiff also told the deputy marshals that she had a sister named "Marta Rodríguez." Although the summary judgment record reveals that plaintiff Rodríguez has three siblings, including a sister named "Maria" and/or "Marta," the *only* grounds asserted in opposition to summary judgment below were the alleged three-inch height difference, a twenty-pound weight difference, an additional scar on plaintiff Rodríguez's forehead, the failure of the United States Marshals Service, SDNY, to forward a photograph and fingerprints to Puerto Rico, and the failure of Deputies Torres and Díaz to request fingerprints.

When Deputies Torres and Díaz advised that they had an arrest warrant for "Manuela Rodríguez," plaintiff protested—to no avail—that she could not be the individual named in the warrant since she had never been to New York. Immediately after the arrest, the deputies attempted—likewise to no avail—to contact a magistrate judge, then booked plaintiff and transported her to a pretrial detention facility for incarceration pursuant to the provisional commitment order previously issued by the magistrate judge. The following day, February 9, plaintiff was brought before a magistrate judge and released on personal recognizance pending a removal hearing on February 13, 1990.

In anticipation of the removal hearing, Deputy Díaz again requested a photograph of the 1975 arrestee from the United States Marshals Service, SDNY. Finally, on February 10, a photograph taken at the Mineola Police Department at the time of the 1975 arrest was mailed to Puerto Rico. When the photograph arrived on February 12, it was readily determined that plaintiff Rodríguez was not the "Manuela Rodríguez" arrested in 1975. On February 13, the government moved to dismiss all proceedings against plaintiff Rodríguez.

In due course the United States Marshals Service disallowed the administrative claim

filed by plaintiffs-appellants, clearing the way for the present action against the United States for false arrest and false imprisonment based solely on the conduct of its deputy marshals in (1) initiating, through Deputy Rodríguez, the wrongful arrest and detention of plaintiff Rodríguez pursuant to the 1975 arrest warrant without obtaining or forwarding a photograph and fingerprints of the 1975 arrestee to the District of Puerto Rico; (2) executing the arrest warrant, through Deputies Torres and Díaz, without a photograph and fingerprints of the subject and notwithstanding the height and weight differences between plaintiff Rodríguez and the 1975 arrestee; and (3) delaying plaintiff Rodríguez's initial appearance before a magistrate judge.[2]

The United States moved for summary judgment on all claims. The district court ruled that plaintiffs had not generated a trialworthy dispute as to whether the arresting deputies had a reasonable basis for believing that plaintiff Rodríguez was the subject named in the 1975 arrest warrant. It concluded that the arresting deputies, with valid warrant in hand, were under no duty to corroborate their reasonable identification by obtaining either fingerprints or a fifteen-year-old photograph and that any failure on the part of Deputy Rodríguez to gather or forward such information was immaterial because the information made available to Deputies Torres and Díaz prior to the arrest was adequate to support a reasonable belief by the arresting deputies that plaintiff Rodríguez was the person named in the 1975 warrant.

Plaintiffs-appellants challenge the district court rulings, on two grounds: (1) that Deputies Torres and Díaz, with neither a photograph nor the fingerprints of the 1975 arrestee, could not have formed a reasonable belief that plaintiff Rodríguez was the subject of the 1975 warrant, particularly in light of the height and weight discrepancies; and (2) that Deputy Rodríguez negligently failed to include a photograph and fingerprints of the 1975 arrestee in the arrest packet transmitted to the United States Marshals Service, DPR.

---

2. Appellants have not pursued the latter claim on    appeal.

The United States responds in kind. First, it claims that Deputies Torres and Díaz had reasonable cause to believe that plaintiff Rodríguez was the 1975 arrestee; hence, they were not negligent. Second, even assuming negligent conduct on the part of Deputy Rodríguez in the pre-arrest investigation, federal law enforcement officers owe no duty to exercise reasonable care in conducting pre-arrest investigations and, secondly, FTCA § 2680(h) waives sovereign immunity from suit for certain enumerated intentional torts only—among them false arrest and false imprisonment—and not for mere negligent investigation.

## II

### DISCUSSION

#### A. *Summary Judgment*

■ A grant of summary judgment is subject to plenary review under the same criteria incumbent on the district court. *Guzman–Rivera v. Rivera–Cruz,* 29 F.3d 3, 4 (1st Cir.1994). Summary judgment is appropriate where the record, viewed in the light most conducive to the party resisting summary judgment, reveals no trialworthy issue of material fact, and the party requesting it is entitled to judgment as a matter of law. *Id.*

#### B. *Sovereign Immunity*

■ For many years the general waiver of sovereign immunity afforded by FTCA § 2674 permitted tort actions to be brought against the United States "in the same manner and to the same extent as [against] a private individual under like circumstances," 28 U.S.C. § 2674, *except* for such so-called "intentional torts" as assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, and interference with contract rights, 28 U.S.C. § 2680(h). Then, in 1974 Congress *narrowed* the "intentional torts" *exception* so as to enable actions against the United States based on six state-law torts—assault, battery, false imprisonment, false arrest, abuse of process and malicious prosecution—arising from acts or omissions of its "investigative or law enforcement officers." *Id.* Thus, the United States is liable—"in the same manner and to the same extent"—for a false arrest of plaintiff Rodríguez, "as a private individual" would be in "like circumstances" under the applicable state law.

#### C. *Applicable Substantive Law*

■ The FTCA ordains that the "law of the place" where the act or omission occurred shall govern actions for damages against the United States. 28 U.S.C. § 1346(b). Its reference to the "law of the place" encompasses choice-of-law principles. *See Richards v. United States,* 369 U.S. 1, 11–13, 82 S.Ct. 585, 591–93, 7 L.Ed.2d 492 (1962); *In re All Maine Asbestos Litigation,* 772 F.2d 1023, 1029 (1st Cir.1985), *cert. denied,* 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986). As all material acts and omissions by Deputy Rodríguez took place in New York, we would look to New York law for the rule of decision applicable to her actions. New York choice-of-law principles provide that conduct-regulating causes of action normally are governed by the law of the place where an actionable injury is sustained. *See Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (1985).

Any injury to plaintiff Rodríguez was sustained in Puerto Rico. Moreover, the parties, as well as the district court, assumed from the start that Puerto Rico law governs any actionable claim predicated on alleged acts and omissions of Deputy Rodríguez in New York. In these circumstances, we do likewise, *see Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.,* 7 F.3d 1047, 1048 n. 1 (1st Cir.1993), since Puerto Rico law bears a "reasonable relation" to all claims in litigation. Finally, since the false arrest and false imprisonment claims under Puerto Rico law raise no relevant distinction in the present context, we treat them as identical causes of action. *Cf. Ayala v. San Juan Racing Corp.,* 112 P.R. Dec. 804, 812 (1982).

#### D. *The False Arrest Claims Relating to Deputy Marshals Torres and Díaz*

Plaintiff Rodríguez contends that Deputies Torres and Díaz subjected her to false arrest

by executing the 1975 warrant despite certain discrepancies between the physical description given by the 1975 arrestee and the physical description and biographical data Deputy Rodríguez provided to the arresting officers. These discrepancies were sufficient, she argues, to engender a reasonable doubt which the arresting deputies should have resolved by obtaining a photograph or fingerprints of the 1975 arrestee. Their failure to do so therefore precluded summary judgment on the central issue whether the arresting officers could have harbored a reasonable belief that plaintiff was the person named in the arrest warrant.

Misidentification cases comprise a distinct subset of false arrest claims, for which particularized rules and standards were fashioned at common law. *See Restatement (Second) of Torts,* § 125 (1965). Even though many such claims have found their way into the courts over the years, *see* William B. Johnson, *Liability for False Arrest or Imprisonment Under Warrant as Affected by Mistake as to Identity of Person Arrested,* 39 A.L.R.4th 705 (1985), careful research has disclosed no reported Puerto Rico Supreme Court decision addressing a false arrest claim based on the execution of a valid arrest warrant against the wrong person.

As a general matter, however, the Puerto Rico Supreme Court has conformed its limited "false arrest" jurisprudence to common law principles. *See, e.g., Ayala,* 112 P.R. Dec. at 813 (citing common law sources, including *Restatement (Second) of Torts*); *Dobbins v. Hato Rey Psychiatric Hosp.,* 87 P.R.R. 28, 31–32 (1962) (citing common law sources, including *Restatement, Torts* (1938)). Accordingly, consistent with our longstanding practice in cases where the Puerto Rico court has not diverged from common law principles, *see Importers Ctr., Inc. v. Newell Cos., Inc.,* 758 F.2d 17, 20 (1st Cir.1985) (looking to *Restatement (Second) of Contracts* (1979), absent controlling Puerto Rico law); *United States v. Marshall,* 391 F.2d 880, 883 (1st Cir.1968) (citing *Restatement, Torts,* where Puerto Rico Supreme Court demonstrated pattern of reliance on common law authority), we adopt the *Restatement (Second) of Torts,* §§ 35–45A, 112–36, as the appropriate framework for analysis of the instant false arrest claim.

### 1. *Conditional Privilege*

■ Generally speaking, an arrest conducted pursuant to a valid warrant is conditionally privileged, and no false arrest liability lies against the officers responsible. *Restatement (Second) of Torts,* §§ 118, 122 (1965). Moreover, where an *agent's* privilege is "properly exercised on his principal's behalf," the principal likewise has a defense to an action based on the conduct of the agent. *Restatement (Second) of Agency,* § 217(a)(iii) (1958).[3] The privilege attaching to the conduct of a government employee acting within the scope of his employment likewise has been recognized as a defense available to the United States in actions based on the so-called intentional torts enumerated in FTCA § 2680(h). *See, e.g., Arnsberg · v. United States,* 757 F.2d 971, 978–79 (9th Cir.1985) (government liability for false arrest under FTCA determined in light of privilege accorded law enforcement officer effecting arrest), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); *Caban v. United States,* 728 F.2d 68, 74 (2d Cir.1984) (same). Thus, the United States is entitled to assert in its defense a conditional privilege conferred upon its agent by applicable local law in the same manner and to the same extent as a nongovernmental principal could assert in similar circumstances. The legislative history accompanying the 1974 amendment makes clear that Congress intended "to make the Government independently liable in damages for the *same type* of conduct that is alleged to have occurred in *Bivens (and for which that case imposes liability upon the individual Government officials involved).* See S.Rep. No. 588, 93d Cong., 2d Sess. 3

---

3. **Section 217. Where Principal or Agent has Immunity or Privilege**

In an action against a principal based on the conduct of a servant in the course of employment:

(a) The principal has a defense if:

. . . .

(iii) the agent had a privilege which he properly exercised on his principal's behalf. . . .

*Restatement (Second) of Agency,* § 217(a)(iii).

(1973), *reprinted in* 1974 U.S.C.C.A.N. 2789, 2791 (emphasis added); *see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Although it is undisputed that plaintiff Rodríguez was arrested pursuant to a valid arrest warrant, the conditional privilege would not insulate the arresting officers from liability unless the arrestee was

> (a) ... a person sufficiently named or otherwise described in the warrant *and* [was] reasonably believed by the [officer] to be, the person intended, *or*

> (b) although not such person, ... knowingly caused the actor[s] to believe [her] to be so.

*Restatement (Second) of Torts,* § 125 (emphasis added). Since the record plainly reflects that plaintiff Rodríguez maintained throughout that she was *not* the person named in the 1975 warrant, we need only inquire—pursuant to subsection 125(a)—whether (1) she was "sufficiently named or otherwise described in the warrant" and (2) Deputies Torres and Díaz "reasonably believed" that she was "the person intended" in the warrant. *See id.* § 125(a).

First and foremost, there can be no question that the person arrested was "sufficiently named" in the 1975 arrest warrant, *see id.* § 125(a), which directed the arrest of a person with the same name as plaintiff Rodríguez. A law enforcement officer "is privileged to arrest the person to whom the name [in the warrant] applies with complete accuracy, although the [officer] may have reason to *suspect* that a mistake has been made, and that the person, though accurately named, is not the person intended." *Id.* § 125 cmt. f (emphasis added).

The United States argues that the name in the 1975 warrant, together with the information contained in the arrest packet, provided ample basis for Deputies Torres and Díaz to form an objectively reasonable belief that plaintiff Rodríguez was the person named in the warrant. Indeed, the information plaintiff herself provided in response to questions from the deputies comported in virtually every detail with the physical description in the arrest packet, *except* for a three-inch discrepancy in height and a twenty-pound difference in weight.[4]

We agree with the government that these slight discrepancies—minor variations between the plaintiff's physical description and the fifteen-year-old DEA booking form description—could not have undermined the objective reasonableness of the arresting deputies' belief that plaintiff was the person named in the 1975 warrant. Furthermore, apparently mindful of the risks inherent in executing a fifteen-year-old arrest warrant, Deputies Torres and Díaz prudently attempted to obtain further information, as well as a photograph, from the United States Marshals Service, SDNY, but were told that no photo or additional information was available. Indeed, the arresting deputies even afforded plaintiff Rodríguez an opportunity to explain how anyone other than she could have provided the DEA with all this information in 1975. Plaintiff Rodríguez was unable to explain then and offers no explanation now.

Their painstaking efforts could have left Deputies Torres and Díaz with little inkling—let alone a *reasonable belief*—that plaintiff Rodríguez was *not* the "Manuela Rodríguez" named in the arrest warrant. Thus, notwithstanding their errant arrest of an innocent person, the arresting officers—having utilized every available means to preclude misidentification—were left with no grounds for forming a reasonable belief that plaintiff Rodríguez was not the person in-

---

4. The arresting deputies confirmed that plaintiff Rodríguez's birthplace, birthdate, abdominal scarring, right-handedness, citizenship, race, and Social Security number were all identical to the data contained in the arrest packet. Plaintiff even confirmed that her sister had the same name as that which the 1975 arrestee had given for her sister. Finally, plaintiff informed Deputies Torres and Díaz that, like the 1975 arrestee, both her parents were deceased as well.

The record is silent as to whether anyone (including plaintiff) noted the three-inch height discrepancy at the time of arrest. The twenty-pound weight difference was reasonably attributed by the deputies to the fact that almost fifteen years had passed since the arrest of "Manuela Rodríguez" in Mineola, New York.

tended in the 1975 arrest warrant. Consequently, the execution of the valid 1975 arrest warrant by Deputies Torres and Díaz was privileged. And, lastly, the United States was entitled to rely on the privilege which attached to the arresting deputy marshals as a complete defense to liability for false arrest, as provided by *Restatement (Second) of Agency*, § 217(a)(iii).

### E. *The Claims Relating to Deputy Rodríguez*

Plaintiffs-appellants further contend that the United States is liable for the "negligent investigation and initiation of arrest proceedings" by Deputy Rodríguez. The United States counters that federal law enforcement officers owe no legal duty to exercise reasonable care in conducting pre-arrest investigations. Additionally, it argues that FTCA § 2680(h) waives sovereign immunity from suit for six enumerated intentional torts only—assault, battery, false imprisonment, false arrest, abuse of process and malicious prosecution. Thus, according to the United States, even if local law afforded a right of action for negligent investigation and initiation it would be barred by sovereign immunity.

### 1. *Negligent Investigation*

Plaintiffs-appellants point to no authority which recognizes a right of action for "negligent investigation" in these circumstances, nor have we found any authority for imposing liability on the sovereign for negligent investigation, whereas several courts have rejected such claims. *See, e.g., Smith v. State,* 324 N.W.2d 299, 302 (Iowa 1982); *Landeros v. City of Tucson,* 171 Ariz. 474, 475, 831 P.2d 850, 851 (App.Ct.1992); *Wimer v. State,* 122 Idaho 923, 925, 841 P.2d 453, 455 (App.Ct.1992); *cf. Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) (applying New York law in FTCA action and rejecting claim that law enforcement officers failed to exercise due care in effecting arrest); *Boose v. City of Rochester,* 71 A.D.2d 59, 421 N.Y.S.2d 740, 744 (1979) (ruling that plaintiff "may not recover under broad general principles of negligence ... but must proceed by way of the traditional remedies of false arrest and

imprisonment and malicious prosecution"). We therefore decline the invitation to speculate that the Puerto Rico Supreme Court would be receptive to such a claim.

### 2. *Instigation of False Arrest*

Plaintiffs-appellants cite *Sami v. United States,* 617 F.2d 755 (D.C.Cir.1979), as support for their contention that the United States may be sued for the conduct of Deputy Rodríguez in initiating the errant arrest. *Sami* held that FTCA § 2680(h) opens the government to suit for false arrest even though its law enforcement officer was *not* directly involved in "frontline law enforcement work." *See id.* at 764; *but cf. Pooler v. United States,* 787 F.2d 868, 872 (3d Cir.) (restricting waiver of sovereign immunity effected under FTCA § 2680(h) to enumerated torts by investigative or law enforcement officers "in the course of a search, a seizure or an arrest"), *cert. denied,* 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986). We need not resolve the question addressed in *Sami,* however, since we conclude that no right of action would lie under the legal principles likely to be applied by the Puerto Rico Supreme Court based on the conduct of Deputy Rodríguez.

One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false arrest. *Restatement (Second) of Torts,* § 45A. "Instigation" is defined as "words or acts which direct, request, invite or encourage the false [arrest] itself." *Id.* § 45A cmt. c. "In the case of an arrest, [instigation] is the equivalent, in words or conduct, of 'Officer, arrest that man!'" *Id.* Though it is by no means clear that Deputy Rodríguez's request to "check the following lead," *see supra* p. 3, amounted to "instigation" as defined in the *Restatement,* we consider whether Deputy Rodríguez herself would be liable for instigating a false arrest of plaintiff Rodríguez in these circumstances.

Instigation of false arrest, like the underlying tort itself, is subject to the conditional privilege accorded arrests effected pursuant to a valid warrant. *Id.* § 45A cmt. b. Consequently, the conduct of Deputy Rodríguez would be privileged so long as the arrestee

was "sufficiently named or otherwise described in the warrant" *and* the officer *instigating* the arrest "reasonably believed" that plaintiff Rodríguez was "the person intended" in the arrest warrant. *Id.* § 125(a); *see id.* § 45A cmt. b.

As noted above, *see supra* p. 13, there is no question but that plaintiff Rodríguez was "sufficiently named" in the 1975 warrant. Nor did the evidence developed at summary judgment generate a trialworthy dispute as to whether Deputy Rodríguez "reasonably believed" that the person identified in the arrest packet she forwarded to Puerto Rico was the person intended by the 1975 arrest warrant. *See id.* § 125 cmt f. Moreover, plaintiffs-appellants have never suggested, either below or on appeal, that their opportunity to conduct discovery was inadequate.

The record evidence reflects that Deputy Rodríguez matched the name and social security number of the fugitive with the name and social security number of an individual residing in Puerto Rico. The arrest packet Deputy Rodríguez forwarded to Puerto Rico included extensive personal and family information provided by the "Manuela Rodríguez" arrested in 1975, which matched almost precisely the personal and family information gathered on plaintiff Rodríguez in 1990. There were two minor discrepancies between the information provided by the 1975 arrestee and that provided by plaintiff Rodríguez: a three-inch height difference and a twenty-pound weight difference. But there is no record evidence whatsoever to suggest that Deputy Rodríguez was even aware of these discrepancies.

Thus, the information forwarded by Deputy Rodríguez, when matched with the information relating to plaintiff Rodríguez herself, afforded ample basis for forming an objectively reasonable belief that plaintiff Rodríguez was the person named in the 1975 arrest warrant. Consequently, Deputy Rodríguez's conduct relating to the errant arrest, even assuming it were actionable as a negligent instigation claim, would be conditionally privileged, *see Restatement (Second) of Torts,* § 125(a), and the United States would be entitled to assert the privilege in its own defense. *See supra* pp. 11–15; *Restatement (Second) of Agency,* § 217(a)(iii).[5]

## III

### *CONCLUSION*

As the challenged conduct of all three Deputy United States Marshals was privileged, summary judgment was properly entered for the United States.

***Affirmed. The parties shall bear their own costs.***

BOWNES, Senior Circuit Judge, concurring in the judgment.

I agree with the judgment mainly because there was an improbably close match between the information provided by the plaintiff and the detailed information in the arrest packet. Given this level of specificity and similarity, I must conclude that it would be entirely unreasonable for a finder-of-fact to posit liability against the government. It was not the government which was culpable but the impostor who framed the plaintiff some fifteen years before the arrest.

I write separately, however, to emphasize that the Restatement principles underlying our decision should not be applied mechanically where multiple government actors are engaged in collective action. In my view, it would be a mistake to treat the New York and Puerto Rico marshals piecemeal, as isolated actors rather than as co-agents of a common principal. Under the right circumstances, co-agents may have a duty to exchange certain information; where there is such a duty, the reasonableness of a given act—and the principal's liability for that act—should be judged in light of what the actor knew or should have known, assuming the reasonable conduct of other concerned

---

5. Nevertheless, given the many uncontrolled ramps leading onto and off the "information highway," Judge Bownes' wise counsel clearly offers law enforcement agencies the best means of avoiding recurrences of the insufficiently explained wrong done in this case. As my brother cautions, all law enforcement officers—whether directly involved in effecting an arrest or simply in gathering and forwarding information for use by the arresting officers—should exercise the high degree of care commensurate with the seriousness of their mission.

actors. This concept of imputed knowledge seems consistent with agency and vicarious liability principles.

The failings of the piecemeal approach can be illustrated using the facts of this case. A piece of information may mean little in the abstract to the person who holds it, but might be decisive to another actor in context. In this case, a photograph remained inert in Deputy Rodriguez's file; had it been forwarded to the Puerto Rico marshals in the field, it would have prevented the plaintiff's arrest. Although I agree with my brother that, in light of the specificity of the information in her arrest packet, Deputy Rodriguez had no reason to fear that the wrong person might be arrested, the opinion nevertheless obscures the government's one regrettable omission. After all, the Puerto Rico marshals saw fit to request the photograph; and the United States has never explained why it was not timely sent.

I doubt that common law principles either dictate a piecemeal approach, or foreclose a more integrated view of collective action. Indeed, my brother's opinion momentarily adopts an integrated view when it rejects the instigation claim against Deputy Rodriguez. *See ante* at 46 ("The arrest packet Deputy Rodriguez forwarded to Puerto Rico ... matched almost precisely the personal and family information gathered on plaintiff Rodriguez in 1990."). This correspondence matters only if Deputy Rodriguez is imputed with the knowledge of information that was gathered solely by the Puerto Rico marshals.

In sum, I have no quarrel with the bulk of my brother's scholarly opinion. I merely wish to raise a word of caution against judging co-agents of a common principal as isolated actors; their actions should be assessed as of one piece.